In re Joseph and Frances
NOONE, Debtors.

Joseph and Frances NOONE,
Debtors/Plaintiffs,

v.

Norman and Marjorie ST.
CYR, Defendants.

Bankruptcy No. 95–12213–JNF.
Adv. No. 95–1570.

United States Bankruptcy Court,
D. Massachusetts.

Nov. 9, 1995.

Brenda Sullivan, Sullivan & Walsh, Mattapan, MA, for Debtors/Plaintiffs.

Jacob Segal, Salem, MA, for Defendants.

Kimberly McCarthy, Murphy, Hesse, Toomey & Lehane, Quincy, MA, for Town of Danvers.

## MEMORANDUM

JOAN N. FEENEY, Bankruptcy Judge.

## I. INTRODUCTION

The matter before the Court is the Motion for Summary Judgment filed by the Defendants, Normand and Marjorie St. Cyr (the "Defendants") with respect to the "Complaint to Recover Money or Property" filed by the Debtors on September 22, 1995. Through their Complaint, the Debtors allege that a foreclosure sale of their residential real estate conducted by Normand St. Cyr ("St. Cyr") was a fraudulent transfer, violated the provisions of section 362(a) of the Bankruptcy Code, 11 U.S.C. § 362(a), and was commercially unreasonable. The Debtors seek a determination that the foreclosure sale conducted by St. Cyr was void and that they are entitled under Chapter 13 of the Bankruptcy' Code to cure the default on their residential mortgage and to resume payments pursuant to the note secured by the mortgage. Notably, the Debtors cite no sections of either the Bankruptcy Code or Massachusetts General Laws in their Complaint, leaving the Court and the Defendants to determine the legal authority, if any, for their claims.

## II. FACTS

The material facts are not in dispute and are supported by the affidavit of Normand St. Cyr. The Debtors filed a voluntary Chapter 13 petition on March 31, 1995. On May 12, 1995, the Danvers Savings Bank (the "Bank") filed a motion for relief from the automatic stay, seeking leave to foreclose its mortgage on the Debtors' property located at 7 Charles Street, Danvers, Massachusetts. The Bank served its motion on the Debtors and their counsel. No objections were filed to the motion, and the Court granted it on May 26, 1995.

In June of 1995, following the commencement of foreclosure proceedings by the Bank, Normand St. Cyr approached the Debtors and offered to purchase their Charles Street residence for $1.00, subject to the Bank's first mortgage and outstanding real estate taxes in the approximate amount of $40,000.00. St. Cyr also offered to pay the Debtors $3,000.00 provided that they vacate the premises no later than July 31, 1995, and, following the completion of renovations, he offered them a right of first refusal to purchase the property "at the fair market value designated by St. Cyr." The Debtors did not accept the offer.

The Bank scheduled a foreclosure sale of the Debtors' property for June 29, 1995 and published notices in the *Danvers Herald* on June 8, 15, and 22, 1995. On June 29, 1995, the day of the scheduled foreclosure sale, the Danvers Savings Bank, in consideration of $23,520.27, assigned the Debtors' mortgage and note to St. Cyr. The assignment was recorded on July 20, 1994 in the Essex South Registry of Deeds.

The public auction was not conducted on June 29, 1995. It was continued to July 25, 1995 at 11:00 a.m. by proclamation, and a further notice was published in the *Salem Evening News* on July 22, 1995.

On July 25, 1995, St. Cyr conducted the auction. The high bidder was Rev. Thomas A. DiLorenzo, a friend of the Debtors. He bid $27,000.00 for the property, executed a Memorandum of Sale that provided that the deed would be conveyed on August 29, 1995, and made a $5,000.00 non-refundable deposit. The second highest bidder was Marjorie St. Cyr with a bid of $26,000.00.

Rev. DiLorenzo failed to complete the purchase, and the property was conveyed to Marjorie St. Cyr in consideration of her $26,000.00 bid, plus the payment of real estate

taxes in the sum of $41,163.57, water and sewer charges in the sum of $2,275.40, and electric bill charges in the sum of $567.78, for a total of $70,006.75.

At the time of the conveyance, the property had an appraised value of approximately $125,000.00. Normand St. Cyr stated in his affidavit that at the time of the foreclosure sale the value of the property was adversely affected by its poor exterior condition, the Debtors' refusal to permit an inspection of the interior of the property by interested bidders, and the Debtors' continued occupancy of the property.

## III. DISCUSSION

Summary judgment shall be entered forthwith "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *See* Fed. R.Civ.P. 56(c), made applicable to this proceeding by Fed.R.Bankr.P. 7056. The Court finds that there are no material facts in dispute. Accordingly, the St. Cyrs are entitled to summary judgment.

■ The Debtors' Complaint is predicated upon two theories: 1) that the St. Cyrs were required to obtain relief from the automatic stay; and 2) that the foreclosure sale was collusive. Normand St. Cyr, as an assignee of the Danvers Savings Bank, was not required to seek and obtain relief from the automatic stay before conducting a foreclosure sale. As an assignee, he "was in effect subrogated to the rights of [the mortgagee]." *Provident Co–Operative Bank v. James Talcott, Inc.*, 358 Mass. 180, 188, 260 N.E.2d 903 (1970). According to the Court in *Talcott,* " '[s]ubrogation is the substitution of one person in place of another, whether as a creditor, or as the possessor of any other rightful claim, so that he who is substituted succeeds to the rights of the other in relation to the debt or claim, and its rights, remedies, or securities.' " *Id.* (citations omitted). Ac-

cordingly, the Debtors' contention that the Defendants violated the automatic stay by conducting the foreclosure sale on July 25, 1995 is wholly without merit.

■ Like the defendant in *Resolution Trust Corp. v. Carr*, 13 F.3d 425 (1st Cir. 1993), the Debtors are aggrieved by the gap between the consideration paid to acquire the property and the value of the property, but are unable to challenge the adequacy of the notice they received or the adequacy of public notice. In the *Carr* case, the United States Court of Appeals for the First Circuit stated that "[a]bsent evidence of bad faith or improper conduct, a mortgagee is permitted to buy the collateral at a foreclosure sale as 'cheaply' as it can, and '[m]ere inadequacy of price will not invalidate a sale unless it is so gross as to indicate bad faith or lack of reasonable diligence.' " *Id.* at 430 (citations omitted). The court in *Carr* held that

> under Massachusetts law, mere inadequacy of the sale price of real estate received at a non-collusive foreclosure sale conducted in full compliance with state law does not constitute a breach of the covenant of good faith and fair dealing and is not an indication that the sale was commercially unreasonable.

*Id.* at 431. Accordingly, the court determined that a foreclosure sale price of 56% of the property's value, ironically the same percentage that applies to the price paid in the instant case when property taxes and other liens on the property are considered, did not warrant a finding that the sale was commercially unreasonable.

■ This result is not changed under either Mass.Gen.Laws Ann. Ch. 109A, § 3 (West 1990) or 11 U.S.C. § 548. Under the Massachusetts version of the Uniform Fraudulent Conveyance Act, fair consideration "is given for property or obligation— ... (c) [w]hen property is received pursuant to a regularly conducted, noncollusive foreclosure sale...." G.L. c. 109A, § 3(c).[1] Likewise, for purposes of section

---

1. Section 4 provides that "Every conveyance made and every obligation incurred by a person who is or will be thereby rendered insolvent is fraudulent as to creditors without regard to his actual intent if the conveyance is made or the obligation is incurred without a fair consideration." G.L. c. 109A, § 4.

548(a)(2)(A), "a fair and proper price, or a 'reasonably equivalent value' for foreclosed property, is the price in fact received at the foreclosure sale, so long as all the requirements of the State's foreclosure law have been complied with." *BFP v. Resolution Trust Corp.,* —— U.S. ——, 114 S.Ct. 1757, 1765, 128 L.Ed.2d 556 (1994).

■ The Debtors pin their hopes on their ability to discover an insider relationship between Normand St. Cyr and the Danvers Savings Bank. They seek the denial of the Motion for Summary Judgment so that they can determine whether there was collusion with respect to the sale. This argument is unpersuasive and cannot defeat the St. Cyrs' Motion. The foreclosure sale took place on July 25, 1995, and the Debtors commenced this adversary proceeding on September 22, 1995. Accordingly, they had two months to conduct discovery by way of Rule 2004 examinations to obtain evidence of collusion. The Debtors had the burden of submitting some evidence that the foreclosure sale was not commercially reasonable, *Carr,* 13 F.3d at 430. They failed to meet that burden.

## IV. CONCLUSION

In accordance with the foregoing, the Court hereby grants the Motion for Summary Judgment and enters final judgment in favor of the St. Cyrs and against the Debtors.

## ORDER

In accordance with the Memorandum dated November 9, 1995, the Court hereby grants the Motion for Summary Judgment filed by Normand and Marjorie St. Cyr and enters final judgment in favor of the St. Cyrs and against the Debtors.

## ORDER

Upon consideration of 1) the "Town of Danvers' Objection to Chapter 13 Plan and Motion to Dismiss Case or Convert to Chapter 7;" 2) the Amended Schedules I and J filed by the Debtors; and 3) Memorandum dated November 9, 1995, in which this Court determined that the Debtors' could not avoid the foreclosure sale conducted by Normand

St. Cyr, as assignee of the The Danvers Savings Bank, the Court shall dismiss the Debtors' Chapter 13 case on November 17, 1995, unless prior to that date the Debtors elect to convert their Chapter 13 case to a case under Chapter 7.