In re Barbara R. FITZGERALD, Debtor.

Federal National Mortgage Association, Movant,

v.

Barbara R. Fitzgerald and Molly T. Whiton, Chapter 13 Trustee, Respondents.

Bankruptcy No. 99–31733.

United States Bankruptcy Court, D. Connecticut.

Aug. 9, 1999.

**256**

Thomas J. Farrell, Hunt, Leibert, Chester & Jacobson, P.C., Hartford, CT, Linda J. Cannata, Jozus, Milardo & Thomasson, Middletown, CT, for movant.

Gregory F. Arcaro, Grafstein and Associates, Farmington, CT, for debtor/respondent.

Molly T. Whiton, Hartford, CT, Chapter 13 Trustee.

## MEMORANDUM OF DECISION ON MOTION FOR RELIEF FROM AUTOMATIC STAY

LORRAINE M. WEIL, Bankruptcy Judge.

This motion for relief from stay arises out of Federal National Mortgage Association's (including its predecessors in interest, "FNMA")[1] judgment of strict foreclosure of a mortgage of the above-referenced debtor's (the "Debtor") primary residence. FNMA obtained a prepetition judgment of strict foreclosure with respect to the subject property. The "law dates" set by that judgment passed prior to the commencement of this chapter 13 case without redemption by the Debtor. FNMA makes

---

1. FNMA holds its interest in respect of the subject mortgage as a result of a chain of assignments relating to the same. For simplicity's sake and because it makes no difference to the result, this memorandum will state the facts as if FNMA held the subject mortgage, debt and judgment from the inception of each.

2. Pursuant to motion-assignment procedures in place at this seat of court, the Motion is pending before me while the Avoidance Action is pending before the Honorable Albert S. Dabrowski, United States Bankruptcy Judge.

the instant motion for relief from the automatic stay pursuant to Section 362(d)(1) of the Bankruptcy Code (the "Motion") in order to enforce an execution of ejectment entered by the foreclosure court against the Debtor (who continues to reside at the subject property) in connection with the foreclosure judgement. The Debtor opposes the Motion contending, *inter alia*, that she has sufficient grounds to support a reopening of the strict foreclosure judgment in the foreclosure court (and has a motion for such reopening pending in that court) and that she has commenced an adversary proceeding (A.P.# 99–3073) in the Bankruptcy Court seeking to avoid the transfer of her rights in respect of the subject property pursuant to the strict foreclosure judgment as a fraudulent transfer under Bankruptcy Code § 548(a)(1)(B) (the "Avoidance Action").[2]

## I. FACTS[3]

The following facts have been gleaned from evidence produced at the hearing on the Motion, from the pleadings and legal memoranda of the parties with respect to the Motion and in the Avoidance Action, and from the remainder of the file for this chapter 13 case. In 1988, the Debtor[4] purchased that certain real property described as "17 Horseshoe Circle, Barkhamsted" (the "Property") for $180,000.00. (Audio Tape of July 7, 1999 Hearing on Motion at 2773 (hereafter cited as "Hearing Tape at _____")). In furtherance of that purchase, the Debtor executed a note, dated August 19, 1988, for the principal

---

3. This memorandum constitutes the findings of fact and conclusions of law mandated by Fed.R.Bankr.P. 7052 made applicable to this contested matter pursuant to Fed.R.Bankr.P. 9014.

4. Michael Fitzgerald, the Debtor's husband who died prepetition, co-signed the loan documents. It is not disputed that the Debtor was the sole owner of the subject property at the time of foreclosure.

amount of $139,400 (the "Note") in favor of FNMA. (Movant's Hearing Ex. 1.) The Note was secured by a mortgage, also dated August 19, 1988 (the "Mortgage"), with respect to the Property. (Movant's Hearing Ex. 2.)

After the Debtor defaulted on the Note, FNMA commenced a state court action (the "Foreclosure Action") to foreclose the Mortgage by service and filing of a complaint dated October 28, 1998. (Movant's Hearing Ex. 7.) In November 1998, the Property was appraised for FNMA at $157,000. (FNMA's Mem.Supp.Mot.Ex. 13.) On December 11, 1998, the foreclosure court entered a default against the Debtor for failure to appear in the Foreclosure Action. (*Id.* Ex. 9.) Neither the Debtor nor FNMA moved for foreclosure by sale. (Hearing Tape at 2581 – 2685.) Pursuant to applicable state court rules of procedure, a copy of FNMA's relevant appraisal report (the "Appraisal") allegedly was served with FNMA's motion for judgment. (Debtor's Mem.Supp.Obj.Exh. 4.) On January 21, 1999, after a hearing, the foreclosure court entered a judgment of strict foreclosure against the Debtor and in favor of FNMA (the "Foreclosure Judgment"). (Movant's Hearing Ex. 9; *see also* Debtor's Mem.Supp.Obj.Ex. 7.) In the Foreclosure Judgment, FNMA's mortgage debt was calculated to be $135,308.35, excluding attorney's fees and costs. (Movant's Hearing Ex. 9.) As reflected in the transcript of the hearing on FNMA's motion for judgment in the Foreclosure Action (the "Transcript"), the foreclosure court noted that, based on the Appraisal, it appeared that the Debtor had about $20,-000 of equity in the Property. (Transcript at 3.)[5] In the Foreclosure Judgment, the

foreclosure court set a "law date" of March 15, 1999 (the "Law Date") for the Debtor.

The Law Date passed without redemption by the Debtor. Accordingly, on March 19, 1999, FNMA recorded a certificate of foreclosure asserting its "absolute" title to the Property (the "Certificate of Foreclosure"). (Movant's Hearing Ex. 11.) On April 15, 1999, the foreclosure court entered an Execution of Ejectment in favor of FNMA authorizing the ejectment of the Debtor from the Property. (Mot.Ex. A.) The Debtor commenced this chapter 13 bankruptcy case by petition filed April 29, 1999, thus (the Debtor asserts) staying FNMA's ejectment of her from the Property (the "Ejectment Action"). (Hearing Tape at 4954–5059.)

The Debtor has filed a proposed chapter 13 plan (the "Chapter 13 Plan") in this case which provides for and/or contemplates her continued possession of the Property, a reinstatement and deacceleration of the Note and Mortgage, and a cure over sixty months of monetary defaults in respect of the same. As of the hearing on the Motion, the Debtor had voluntarily deposited "into escrow" on a monthly basis with her bankruptcy attorney payments equal to the amount of the monthly payments provided for in the Note and Mortgage (i.e., $1,367.29 per month) for the months of May, 1999 and following. (Id. at 3176–3227.)[6] At the hearing on the Motion, the Debtor committed to continue such monthly "escrow deposits" pending confirmation of the Chapter 13 Plan. (*Id.* at 4179–4246; *see also* Debtor's Post–Trial Mem. Supp. Obj. at 9, 11.)

As a concededly necessary predicate to confirmation of the Chapter 13 Plan, the

---

5. A copy of the Transcript was annexed to both the Debtor's Memorandum of Law in Support of Respondent Barbara R. Fitzgerald's Objection to Motion For Relief from Stay as Exhibit 5 and FNMA's Memorandum of Law in Support of Motion For Relief from Stay as Exhibit 14.

6. Presumably, those "deposits" are substituted for the postpetition / preconfirmation pay-

ments due to FNMA by statute and the terms of the Chapter 13 Plan. *See* 11 U.S.C. § 1326(a) ("Unless the court orders otherwise, the debtor shall commence making the payments proposed by a [chapter 13] plan within 30 days after the plan is filed."). Given the pending Motion, FNMA to date has not sought to enforce the right to receive those payments.

Debtor has filed: with the foreclosure court, a Motion To Open the Judgment (the "Motion To Reopen") with respect to the Foreclosure Judgment (Respondent's Hearing Ex. A)[7]; with the Bankruptcy Court, the complaint initiating the Avoidance Action. In the Avoidance Action complaint, the Debtor adopts the Appraisal's valuation of the Property of $157,000 and alleges that the forced transfer of the Debtor's equity of redemption in the Property in exchange for satisfaction of about $135,000 in mortgage debt was not a transfer for "reasonably equivalent value" within the purview of Bankruptcy Code § 548(a)(1)(B)(i). (Compl.¶¶ 9, 11.) Accordingly, the Avoidance Action seeks avoidance of that transfer and thus to restore to the Debtor her equity of redemption and possessory rights in respect of the Property.

On May 11, 1999, FNMA filed the Motion seeking relief from the automatic stay for "cause" under Section 362(d)(1) to continue the Ejectment Action. The Debtor asserts that "cause" does not exist for relief from stay because of the pendency of the Motion To Reopen and the Avoidance Action. On July 7, 1997, a hearing was held on the Motion at which the court received evidence, including the testimony of the Debtor, and heard oral arguments.

## II. DISCUSSION

### A. *Applicability of the automatic stay*

As an initial matter, FNMA argues that the Ejectment Action is not subject to the automatic stay imposed by Bankruptcy Code § 362(a) because the passing of the Law Date (and the procedures which followed) extinguished all interests held by the Debtor with respect to the Property. (FNMA's Suppl.Mem.Supp.Mot. dated July 1, 1999 at 2 (cited hereafter as "FNMA's Suppl. Mem.")). Accordingly, FNMA argues, the Property does not constitute property of the estate and the automatic stay thus does not apply. (FNMA's Mem.Supp.Mot. at 5–6.) FNMA, therefore, reads into the proceedings an application by the Debtor for injunctive relief under Bankruptcy Code § 105(a) to restrain FNMA "from selling the [P]roperty pending a resolution of the [Avoidance Action]." (FNMA's Suppl.Mem. at 3.)

FNMA's argument is unavailing for two reasons. First, even if the Debtor's interest in the Property is a mere, bare possessory interest, "a mere possessory interest in real property, without any accompanying legal interest, is sufficient to trigger the protection of the automatic stay." *48th Street Steakhouse, Inc. v. Rockefeller Group, Inc. (In re 48th Street Steakhouse, Inc.),* 835 F.2d 427, 430 (2d Cir.1987), *cert. denied,* 485 U.S. 1035, 108 S.Ct. 1596, 99 L.Ed.2d 910 (1988) (citations omitted). That is because a debtor's bare possessory interest in realty is property of the estate that is protected by the automatic stay even if the realty itself is not property of the estate. *See Cuffee v. Atlantic Business and Community Development Corp. (In re Atlantic Business and Community Corp.),* 901 F.2d 325, 328 (3d

---

**7.** At the hearing on the Motion (and in her responsive pleadings), the Debtor requested relief from stay to prosecute the Motion To Reopen. The Motion To Reopen is based, at least in part, upon an alleged failure of FNMA to effectuate lawful service upon the Debtor of certain pleadings (other than the complaint which she admits was served in hand) in the Foreclosure Action, certain communications with FNMA during the pendency of the Foreclosure Action, and FNMA's receipt of purported "mortgage payments" from the Debtor after the entry of the Foreclosure Judgment. (Debtor's Post–Trial Mem. Supp. Obj. at 1–2.) In essence, the Debtor asserts that, although she knew that the Foreclosure Action was pending, she was misled by certain alleged conduct of FNMA, and an alleged failure of FNMA to effectuate service upon her of certain foreclosure pleadings, into believing that the Foreclosure Action would not go forward while she confirmed with FNMA the amount necessary to bring her mortgage current and made arrangements for a cure of defaults (which "cure" she claims she was ready and able to do). *Id.* For reasons discussed below, it is not necessary for the court to address those allegations at this time. However, the court will modify the automatic stay in this case to permit the Debtor to prosecute the Motion To Reopen in the foreclosure court.

Cir.1990) (holding that debtor's possession of tenancy at sufferance in radio station was property of the estate and subject to Section 362(a)); *In re Reinhardt,* 209 B.R. 183, 187 (Bankr.S.D.N.Y.1997) (holding that debtor's possessory interest in residential lease, for which lessor had obtained judgment of possession and warrant of execution, was protected by the automatic stay).

■ Second, the filing of a bankruptcy petition automatically triggers a stay of the "enforcement, against the debtor . . . of a judgment obtained before the commencement of the case." 11 U.S.C. § 362(a)(2). FNMA acted in furtherance of the prepetition Foreclosure Judgment in obtaining the Execution of Ejectment. Thus, enforcement of the Execution of Ejectment qualifies as a proscribed act under Section 362(a)(2). *See* 3 Lawrence P. King, *Collier on Bankruptcy* ¶ 362.03[4], at 362–19 (15th ed. rev.1999) ("[P]roceedings supplementary to judgment, such as a . . . levy of execution . . . and exercise of any other postjudgment remedies are also stayed."). For the reasons set forth above, the court concludes that the automatic stay provision of Bankruptcy Code § 362 and the standards for relief thereunder are applicable to FNMA's continued prosecution of the Ejectment Action; Bankruptcy Code § 105(a) is inapplicable here.

B. *Burden of Proof for Relief from Stay under Bankruptcy Code § 362(d)(1) for "cause"*

■ · Bankruptcy Code § 362(d)(1)[8] provides· for relief from the automatic stay

for "cause." The United States Court of Appeals for the Second Circuit has explained the relevant analysis for the burden of proof under the Section 362(d)(1) "cause" provision as follows:

> The burden of proof on a motion to lift or modify the automatic stay is a shifting one. Section 362(d)(1) requires an initial showing of cause by the movant, while Section 362(g) places the burden of proof on the debtor for all issues other than the debtor's equity in property. . . . . If the movant fails to make an initial showing of cause, however, the court should deny relief without requiring any showing from the debtor that it is entitled to continued protection.

*Sonnax Industries, Inc. v. Tri Component Products Corp. (In re Sonnax Industries, Inc.),* 907 F.2d 1280, 1285 (2d Cir.1990) (citations and internal quotation marks omitted). *See also In re Mazzeo,* 167 F.3d 139, 142 (2d Cir.1999). If, however, the movant is able to make an initial showing of "cause," the burden then shifts to the debtor to demonstrate entitlement to the protection of the stay; the risk of nonpersuasion is on the debtor. *Id. See also In re 234–6 West 22nd St. Corp.,* 214 B.R. 751, 756 (Bankr.S.D.N.Y.1997) (stating that debtor bears burden of going forward with evidence and the "burden of ultimate persuasion.").

■ In order to preserve the expedited nature of relief from stay proceedings which Congress intended, when a debtor's opposition to a request for relief from stay raises "extraneous grounds" (as contrasted

---

**8.** Section 362 provides in relevant part:

> (d) On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay—
> (1) for cause, including the lack of adequate protection of an interest in property of such party in interest. . . .

11 U.S.C. § 362(d)(1). At the hearing on the Motion, counsel for FNMA confirmed that FNMA's allegation of "cause" for relief from

stay did not include an allegation of a lack of adequate protection of FNMA's interest in the Property. (Hearing Tape at 1966–2068.) The term "cause" (when not including an allegation of a lack of adequate protection) is not defined in the Bankruptcy Code or in the relevant legislative history, which only gives "general guidance," *In re Mazzeo,* 167 F.3d 139, 142 (2d Cir.1999) (citation and internal quotation marks omitted). The "facts of each request will determine whether relief is appropriate under the circumstances." *Id.* (citation and internal quotation marks omitted).

with "specific statutory grounds" such as the existence of adequate protection), such "extraneous grounds" "will ... be considered in the summary manner appropriate to an equivalent request for a restraining order or preliminary injunction." *Vale Mills Corp. v. Gellert (In re Gellert)*, 55 B.R. 970, 976 (Bankr.D.N.H.1985). *Cf. In re The Moore & White Co., Inc.*, 83 B.R. 277, 283–84 (Bankr.E.D.Pa.1988) (concluding that debtor's relief from stay burden would be met if the debtor "come[s] forward with sufficient evidence to allow the court to conclude that there is a reasonable probability that he will ultimately prevail in a fraudulent transfer action."). Here, the Debtor asserts the pendency of relevant litigation to negate FNMA's allegation of "cause" for relief from stay. In the context of this relief from stay motion, the merits of those claims constitute "extraneous grounds" necessitating evaluation on a preliminary injunction standard.

■ In the Second Circuit, to obtain a preliminary injunction a party must show: (a) irreparable harm should the injunction not be granted, and (b) *either* (i) a likelihood of success on the merits, *or* (ii) sufficiently serious questions going to the merits and a balance of hardships decidedly in favor of the movant. *Forest City Daly Housing Inc. v. Town of North Hempstead*, 175 F.3d 144, 149 (2d Cir. 1999). With regard to the issue of irrepa-

rable harm to the Debtor, if the Debtor's rights in respect of the Property ultimately were determined to be recoverable after she had been ejected from the premises, she would have needlessly undertaken *two* moves (moving out *and* moving back in). The Debtor is a mother with three young children.[9] The court notes the disruption two such moves would wreak upon the Debtor and her family. For the foregoing reasons, the court finds that the Debtor would suffer irreparable harm if the stay of the Ejectment Action is not continued in effect while her litigation is pending.[10]

■ With respect to the hardship to FNMA, at most FNMA may lose the use value of the Property (or earned income on the proceeds of any potential sale of the same) while the Debtor continues in possession of the Property. The conditions (discussed in subpart *E* of this memorandum, below) which the court imposes on the continued existence of the automatic stay of the Ejectment Action will compensate FNMA for that potential loss. Thus, the balance of hardships here is "decidedly" in the Debtor's favor. Accordingly, the sole remaining issue in these relief from stay proceedings is whether there are "sufficiently serious questions going to the merits" of the Avoidance Action to justify continuing the automatic stay in effect.[11]

■ In support of the existence here of "cause", FNMA cites two cases from this

---

9. According to Schedule I (Current Income of Individual Debtor) of the Schedules filed by the Debtor in this case, she has children ages 1, 6, and 7.

10. The Debtor argues that if FNMA ejects her from the Property and the Property is sold to a bona fide purchaser for value without knowledge of voidability, the Debtor will be unable to recover her equity of redemption with respect to the Property even if the same would be otherwise recoverable. (*See* Debtor's Post–Trial Mem.Supp.Obj. at 8; 11 U.S.C. § 550(b)). The court is reluctant to accept that allegation of irreparable injury because such injury may be averted by the Debtor's filing a notice of *lis pendens* (with respect to the Avoidance Action) on the appropriate land records. *See* Conn.Gen.Stat. § 52–325.

11. The court believes that it is very likely that the Motion To Reopen will be fully adjudicated by the foreclosure court prior to full adjudication of the Avoidance Action in the Bankruptcy Court. That is because the Avoidance Action is an adversary proceeding now only in its pre-answer stage. Accordingly, in the interests of preserving scarce judicial and legal resources by avoiding likely follow-up relief from stay proceedings, the court will analyze the merits of the longer-to-litigate Avoidance Action. Given the results of that analysis, *infra*, it is unnecessary at this time for the court to analyze the merits of the Motion To Reopen. In the unlikely event that the Avoidance Action *is* fully adjudicated while the Motion To Reopen remains pending, FNMA may file a follow-up motion in this court to obtain an evaluation of the

district: *New England Bank & Trust v. Loubier (In re Loubier)*, 6 B.R. 298 (Bankr.D.Conn.1980) (Krechevsky, B.J.); and *In re Kane*, 236 B.R. 131, 34 B.C.D. 509 (Bankr.D.Conn.1999) (Krechevsky, B.J.). In each of those cases, the court granted relief from stay because title had vested in the mortgagee prepetition pursuant to a completed mortgage foreclosure proceeding. However, in neither case was there pending (or even threatened) litigation directed at the mortgagee's title to the property (as there is here), nor was there a possibility that a chapter 13 plan could deal with the mortgage debt (as there is here). Thus, there was no need for Judge Krechevsky to proceed to the second stage of the relief from stay analysis (i.e., analysis of the merits of pending litigation on a preliminary injunction standard) in those cases. Rather, Judge Krechevsky granted relief from stay because the court lacked jurisdiction to administer the subject property. *See In re Loubier*, 6 B.R. at 303. Here, if the Debtor succeeds in the Avoidance Action, the Property will become property of the estate, *see* 11 U.S.C. § 541(a)(3), and the court will have jurisdiction to administer it in some fashion in this bankruptcy.[12] Except for supporting the conclusion (which I accept) that FNMA has made a *prima facie* case of "cause" for relief from stay, *Loubier* and *Kane* are inapplicable here.

### C. *Connecticut Foreclosure Procedure*

Some understanding of Connecticut mortgage foreclosure law is helpful to understanding the remainder of this memorandum. Accordingly, a brief outline of that law follows.

Connecticut is considered a "title theory" state wherein the mortgagor pledges property to the mortgagee as security for a debt and conveys "legal title" to the mortgaged premises; the mortgagor retains "equitable title" or the "equity of redemption." *Barclays Bank of N.Y. v. Ivler*, 20 Conn.App. 163, 166, 565 A.2d 252, *cert. denied*, 213 Conn. 809, 568 A.2d 792 (1989) (citation omitted). *See also New Milford Savings Bank v. Jajer*, 244 Conn. 251, 256 n. 11, 708 A.2d 1378 (1998). The equity of redemption permits the mortgagor to regain legal title to the mortgaged property upon satisfying the conditions of the mortgage, which usually entails the payment of the mortgage debt in full. *Ivler*, 20 Conn.App. at 166, 565 A.2d 252.

An action to foreclose a mortgage of real property is commenced by the service and filing of a complaint for foreclosure. *See* Conn. Practice Book § 10–69. The mortgagee's motion for judgment must be served with a copy of an appraisal report stating the value of the subject property. Conn. Practice Book § 23–16. Connecticut provides for the foreclosure of a mortgage of real property by either public sale or by strict foreclosure. The property is foreclosed by strict foreclosure unless the court orders foreclosure by sale. Conn. Gen.Stat. § 49–24. *See also Brand v. Woolson*, 120 Conn. 211, 180 A. 293 (1935).

merits of the Motion To Reopen, if appropriate.

12. At this stage of the proceedings, it is not necessary to decide whether the debtor can accelerate, cure and reinstate the relevant mortgage debt pursuant to Bankruptcy Code § 1322(b) subsequent to recovery of her equity of redemption in the Property in the Avoidance Action (if such recovery, in fact, occurs). However, the court notes that at least some authority appears to support the Debtor's ability to do so. *See Cole v. Sovran Mortgage Corp. (In re Cole)*, 81 B.R. 326, 332 (Bankr. E.D.Pa.1988). *Cf.* 11 U.S.C. § 1322(c)(1)

("[A] default with respect to ... a lien on the debtor's principal residence may be cured under ... [Sections 1322(b)(3) or 1322(b)(5)] ... until such residence is sold at a *foreclosure sale* that is conducted in accordance with applicable nonbankruptcy law...." (emphasis added)); *Valente v. Savings Bank of Rockville*, 34 B.R. 362 (D.Conn.1983) (cure, deacceleration and reinstatement of mortgage debt permitted even after mortgage debt has been "merged" into foreclosure judgment). Accordingly, the court concludes that there are "sufficiently serious questions going to the merits" of that issue.

The foreclosure court has the discretion to order foreclosure by sale on the motion of a party if there is "substantial equity" in the property for the mortgagor or junior encumbrancers. *Fidelity Trust Co. v. Irick*, 206 Conn. 484, 489–90, 538 A.2d 1027 (1988).

If strict foreclosure is ordered, the court, in its discretion, sets the redemption period, or "law day", for the owner of the equity of redemption, and directs that "subsequent days be given subsequent encumbrancers in the inverse order of their priorities." Denis R. Caron, *Connecticut Foreclosures* § 5.02D1 at 149 (3d ed.1997) (hereafter, "Caron"). When there is little or no equity in the property, the redemption period is short. Denis R. Caron, Types of Foreclosure Judgments, *The Law of Distressed Real Estate*, § CT1.03 (West 1998). In cases where there is equity in the property but foreclosure by sale has not been ordered, a longer redemption period may be set by the foreclosure court in its discretion. *Id.* Such longer redemption period is intended to give the mortgagor an opportunity to pay the mortgage debt by selling the property or refinancing the mortgage debt. Caron, § 5.02D at 143. Prior to the passage of each "law day", each respective defendant in the foreclosure action may redeem the property (and obtain title thereto) by paying the foreclosing mortgagee in full. Conn.Gen.Stat. § 49–19. The passing of the first law day without redemption by the mortgagor extinguishes the mortgagor's right of redemption and unconditional legal title vests in the "redeeming encumbrancer" or, if none, the mortgagee. *See Jajer*, 244 Conn. at 256 n. 11, 708 A.2d 1378; *Ivler*, 20 Conn.App. at 166, 565 A.2d 252. The redeeming encumbrancer, if any, or the mortgagee is required by statute to file a certificate of foreclosure asserting "absolute" title. Conn.Gen.Stat. § 49–16.[13] Consequently, the mortgagor is divested of equitable title and the ability to obtain legal title, and "has no remaining title or interest which he may convey." *Ivler*, 20 Conn.App. at 166, 565 A.2d 252.

After the mortgagor's equity of redemption is extinguished, the former mortgagor then holds a bare possessory interest as a tenant at sufferance and the new owner of the property is entitled to receive use and occupancy payments from the mortgagor. *Small Business Investment Co. v. Cavallo*, 188 Conn. 286, 289, 449 A.2d 988 (1982). If the foreclosure court enters judgment for the mortgagee and finds that the mortgagee is entitled to possession of the subject property, the court may issue an execution of ejectment commanding all parties named in the foreclosure complaint to be ejected from the premises. Conn.Gen. Stat. § 49–22.

### D. *Analysis of the Merits*

■ FNMA asserts that "cause" exists because the passing of the Law Date and the filing of the Certificate of Foreclosure occurred prior to the commencement of this case. (Hearing Tape at 976–1064.) Accordingly, the Debtor was left only with a bare possessory interest in the Property at the commencement of the case. (*Id.* at 1066–1166.) Based upon FNMA's showing, the court finds that FNMA has satisfied its initial burden under Section 362(d)(1), *see supra* at 259. In response to the shifting burden of proof, the Debtor contends that the pending Avoidance Action seeks to avoid the transfer of the Debtor's rights as a fraudulent transfer under Section 548(a)(1)(B)[14] on the

---

**13.** The filing of the certificate of foreclosure is a mere notice-giving act reflecting that "absolute title" has *already* passed. *See In re St. Amant*, 41 B.R. 156, 159 n. 6 (Bankr.D.Conn. 1984).

**14.** The courts in this district have consistently concluded that a chapter 13 debtor may utilize the trustee's avoidance powers. *See, e.g., Carr v. Demusis (In re Carr)*, 34 B.R. 653, 655 (Bankr.D.Conn.1983), *aff'd,* 40 B.R. 1007 (D.Conn.1984) (section 548(a) action); *In re Toronto*, 165 B.R. 746, 751 (Bankr.D.Conn. 1994) (section 547(a) action); *Ottaviano v. Sorokin & Sorokin, P.C. (Matter of Ottaviano),*

grounds that the value of those rights (i.e., her "equity" in the Property of approximately $20,000) was transferred to FNMA for less than "reasonably equivalent value" ("REV").[15] Consistent with the analysis set forth in subpart *B* of this memorandum, above, the court must determine if there are "sufficiently serious questions going to the merits" of the Avoidance Action.

FNMA asserts that there is *no* likelihood that the Debtor will succeed in the Avoidance Action because: (i) the doctrine of res judicata/collateral estoppel bars the litigation of the issue that FNMA did not give REV in exchange for the Debtor's rights in the Property (FNMA's Mem. Supp.Mot. at 9); and (ii) the Foreclosure Judgment (and resulting transfer of the Debtor's equity of redemption) was obtained as a result of adherence to state strict foreclosure procedures and, consequently, the existence of REV is conclusively presumed under *BFP v. Resolution Trust Corp.*, 511 U.S. 531, 114 S.Ct. 1757, 128 L.Ed.2d 556 (1994) (FNMA's Mem. Supp.Mot. at 9; *see also* Hearing Tape at

> 68 B.R. 238, 240 (Bankr.D.Conn.1986) (section 548(a) action).

**15.** Section 548 provides in pertinent part:

> (a)(1) The trustee may avoid any transfer of an interest of the debtor in property, or any obligation incurred by the debtor, that was made or incurred on or within one year before the date of the filing of the petition, if the debtor voluntarily or involuntarily—
> . . .
> (B)(i) received less than a reasonably equivalent value in exchange for such transfer or obligation; and
> (ii)(I) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation. . . .
> 11 U.S.C. § 548(a). The definition of "transfer" in section 101(54) includes the "foreclosure of the debtor's equity of redemption." 11 U.S.C. § 101(54). *See also BFP v. Resolution Trust Corp.*, 511 U.S. 531, 535, 114 S.Ct. 1757, 128 L.Ed.2d 556 (1994). FNMA does not suggest in its pleadings that it contests any statutory predicate under Section 548(a)(1) other than the allegation that the subject transfer was not in exchange for REV.

1552–1790). Each of FNMA's theories will be discussed below.

### 1. *Collateral Estoppel*[16]

Connecticut courts grant preclusive effect to a default judgment unless it was obtained by fraud or collusion; "[as] a general rule, like effect will be accorded a Connecticut default judgment in a federal court." *In re Novak*, 37 B.R. 31, 33 (Bankr.D.Conn.1983). *See also F.D.I.C. v. Roberti (In re Roberti)*, 201 B.R. 614, 618 n. 3 (Bankr.D.Conn.1996). Collateral estoppel (often called "issue preclusion") bars the relitigation of a particular issue which was actually litigated and necessarily determined in a prior action. *City of Milford v. Andresakis*, 52 Conn.App. 454, 461, 726 A.2d 1170 (1999). The Connecticut rule (applicable to these bankruptcy proceedings) is that when there has " 'been a full and fair opportunity to litigate issues and such issues were necessary to a default judgment, that judgment should put to rest subsequent litigation of all issues necessary for the rendering of the default

Accordingly, for the purposes of this memorandum only, I have assumed that REV is the only litigable issue in the Avoidance Action. However, I note that FNMA has not filed its answer in the Avoidance Action yet.

**16.** FNMA's papers speak in terms of both res judicata and collateral estoppel without clearly distinguishing between the two doctrines. In Connecticut, the doctrine of res judicata (often referred to as "claim preclusion") provides that, between the same parties and their privies, a judgment rendered on the merits operates as an absolute bar in a subsequent action to litigate any claim arising out of the same cause of action when that claim was or could have been litigated in the prior action. *City of Milford v. Andresakis*, 52 Conn.App. 454, 462, 726 A.2d 1170 (1999). The court concludes that claim preclusion is inapplicable here to bar the adjudication of the Avoidance Action because, among other reasons, a fraudulent transfer claim was not and could not have been litigated in the Foreclosure Action and, in any event, Connecticut does not impose a compulsory counterclaim rule, *see* Conn. Practice Book §§ 10–10, 10–54. Accordingly, the court will discuss at length only FNMA's collateral estoppel theory.

judgment.' " *In re Roberti,* 201 B.R. at 619 (quoting *Jackson v. R.G. Whipple, Inc.,* 225 Conn. 705, 717–18, 627 A.2d 374 (1993) (emphasis omitted)). Although the issue appears to be disputed, the court will assume that the Foreclosure Judgment is not properly subject to collateral attack. Accordingly, the court will assume that the Foreclosure Judgment is entitled to its full collateral estoppel effect in accordance with applicable Connecticut law.

For collateral estoppel to apply to bar litigation of an issue in a subsequent proceeding, the issues in both proceedings must be "identical." *See Connecticut National Bank v. Rytman,* 241 Conn. 24, 38, 694 A.2d 1246 (1997); *see also Liona Corp., Inc. v. PCH Associates (In re PCH Associates),* 949 F.2d 585, 593 (2d Cir. 1991). A finding of "complete identity of issues" may not be critical to a collateral estoppel analysis, *see Greene v. United States,* 79 F.3d 1348, 1352 (2d Cir.), *cert. denied,* 519 U.S. 1028, 117 S.Ct. 582, 136 L.Ed.2d 512 (1996). Rather, the requirement of identity of issues may be deemed to be met if the issues are "in substance the same," *see Montana v. United States,* 440 U.S. 147, 155, 99 S.Ct. 970, 59 L.Ed.2d 210 (1979). *Accord Raytech Corp. v. Official Committee of Unsecured Creditors of Raytech Corp. (In re Raytech),* 217 B.R. 679, 687 (Bankr.D.Conn.1998). However, even if Connecticut would require FNMA to make a showing of complete identity of issues to satisfy that element of collateral estoppel, FNMA would be unsuccessful here since, as discussed below, it is unable to meet the less stringent standard of issues "in substance the same".

FNMA argues that since "[t]he state court determined that a foreclosure sale was not warranted ... [n]either the amount of the debtor's equity in the property nor the balancing of the hardships between the parties are issues which can be re-litigated in this proceeding" (FNMA's Mem.Supp.Mot. at 9.) That argument is flawed. The question of whether or not litigation of the REV issue in the

Avoidance Action would constitute a prohibited relitigation of an issue is a function of (a) whether that issue is (at least) "in substance the same" as the issue of foreclosure by sale versus strict foreclosure claimed to have been raised and litigated in the Foreclosure Action and (b) whether that issue was "necessary" to the Foreclosure Judgment. *See Montana, supra; In re Roberti, supra.*

Here the issues cannot be said to be "in substance the same." That is because the standard for determining the necessity for foreclosure by sale and the standard for determining REV are distinct. The standard for determining necessity of foreclosure by sale is whether "the value of the property substantially exceeds the value of the lien being foreclosed." *Town of Voluntown v. Rytman,* 27 Conn.App. 549, 555, 607 A.2d 896, *cert. denied,* 223 Conn. 913, 614 A.2d 831 (1992) (citing *Irick,* 206 Conn. at 489, 538 A.2d 1027). However, in determining whether property was transferred for REV, the court must not only compare the value of the property transferred to the value given for it, but also must consider all the other facts and circumstances surrounding the transfer. *Walker v. Littleton (In re Littleton* ), 888 F.2d 90, 93 (11th Cir.1989) (abrogated on other grounds by *BFP* ). The court concludes that the relevant issues in the Foreclosure Action and the Avoidance Action are not "in substance the same" for collateral estoppel purposes.

However, even if those issues *were* "in substance the same" (or even strictly "identical"), a determination of the necessity of foreclosure by sale (as opposed to strict foreclosure) was not "necessary" to the Foreclosure Judgment. Neither party filed a motion for foreclosure by sale. It is true that the foreclosure court has the discretion to order foreclosure by sale *sua sponte.* However, that power is discretionary (rather than mandatory) and the mortgagor may have reasons for not requesting foreclosure by sale even if there appears to be "substantial equity" in the

subject property. *See* Caron, § 5.02D at 143 (The owner of the equity may opt not to seek a foreclosure sale even if there is equity in the property because "[t]here may be a contemplated refinancing, a private sale may already be in the works, or more time to find a private buyer may be desired."). Accordingly, the conclusion that the foreclosure court here failed to order foreclosure by sale because there was insufficient equity to justify foreclosure by sale is not the only reasonable conclusion to be drawn from the court's entry of the Foreclosure Judgment.[17] Therefore, that conclusion is not "necessary" to the Foreclosure Judgment. *See Harris v. George (In re George)*, 205 B.R. 679, 681 (Bankr.D.Conn.1997) (" 'An issue is necessarily determined if, in the absence of a determination of the issue, the judgment could not have been validly rendered.' ") (quoting *Jackson*, 225 Conn. at 714–15, 627 A.2d 374).

### 2. *Applicability of BFP*

FNMA argues that its compliance with Connecticut strict foreclosure procedures [18] conclusively determines the existence of REV in connection with the subject foreclosure in accordance with the holding of *BFP, see supra* at 263. I disagree.

In *BFP*, the Court rejected "fair market value" [19] as the valuation standard for applying REV in the context of a non-collusive public foreclosure sale of real estate conducted in accordance with state law. Rather, the Court held that, in the context of such a foreclosure sale, "the only legiti-

mate evidence of the property's value at the time it is sold is the foreclosure-sale price itself." *BFP*, 511 U.S. at 549, 114 S.Ct. 1757.

In *Wentworth v. Town of Acton, Maine (In re Wentworth)*, 221 B.R. 316 (Bankr. D.Conn.1998), Judge Krechevsky held that the *BFP* rationale did not apply to a non-judicial tax forfeiture proceeding which did not require a public sale. FNMA seeks to distinguish *Wentworth* on the grounds that the forfeiture procedure at issue in *Wentworth* was non-judicial whereas the strict foreclosure (but non-sale) procedure at issue here was conducted under court supervision. (*See* FNMA's Mem.Supp.Mot. at 10–11; Hearing Tape at 1634–1648.) However, in *Demusis v. Carr (In re Carr)*, 40 B.R. 1007 (D.Conn.1984), *aff'g* 34 B.R. 653 (Bankr.D.Conn.1983), the District Court held that the issue of equivalency of value received by a mortgagor in a Connecticut strict foreclosure proceeding was subject to adjudication in a Section 548 avoidance proceeding because Connecticut strict foreclosure procedure did not provide for a public sale. *See Carr*, 40 B.R. at 1009 (noting that a public sale "triggers ... market forces ... that no amount of judicial oversight can effect."). *Carr* was decided before the Supreme Court's ruling in *BFP*. However, as discussed below, the court concludes that *Carr* remains valid precedent.

FNMA argues that *Carr* was overruled by *BFP*. (FNMA's Suppl.Mem. at 5.) To support that argument, FNMA relies upon *Vermillion v. Scarbrough (In re Vermil-*

---

**17.** As the Transcript indicates, the foreclosure court could have entered a strict foreclosure judgment because that court declined to exercise its discretionary power to order foreclosure by sale in the absence of any request for such relief. (Transcript at 2–3.)

**18.** The issue of FNMA's compliance with Connecticut strict foreclosure procedure is disputed by the Debtor. For the purposes of this memorandum only, the court has assumed such compliance by FNMA.

**19.** "Fair market value" is

such a price as would be fixed by negotiation and mutual agreement, after ample time to find a purchaser, as between a vendor who is willing (but not compelled) to sell and a purchaser who desires to buy but is not compelled to take that particular ... piece of property.

*BFP*, 511 U.S. at 538, 114 S.Ct. 1757 (citation and internal quotation marks omitted). Typically, real estate appraisals are prepared in accordance with a "fair market value" standard.

*lion),* 176 B.R. 563 (Bankr.D.Or.1994). (FNMA's Suppl.Mem. at 4.) In *Vermillion,* the court concluded that the holding of *BFP* applied to an Oregon land-sale contract forfeiture proceeding which was "regularly conducted pursuant to state law ... despite the absence of a sale...." *In re Vermillion,* 176 B.R. at 569. The *Vermillion* court reasoned that:

> *BFP* emphatically directs that federal law, in the absence of specific statutory direction otherwise, be interpreted to support state laws in areas of their traditional province. Section 548(a)[ (1) ] is found to contain no such direction.

*Id.* at 570. In other words, *Vermillion* suggests that if a state foreclosure-type procedure comports with due process, then *BFP* requires that a transfer effectuated in compliance with that procedure be placed outside the purview of Section 548(a)(1).

The rationale of *Vermillion* has been rejected by at least one other court. *See Dunbar v. Johnson (In re Grady),* 202 B.R. 120 (Bankr.N.D.Iowa 1996). In rejecting the *Vermillion* rationale, the *Grady* court reasoned as follows:

> [T]he Court concludes that contract forfeiture in Iowa is sufficiently dissimilar from mortgage foreclosure by sale that *BFP* does not apply. *Contra Vermillion,* 176 B.R. at 570. In mortgage foreclosure sales, market forces are mobilized by advertising of the sale, advance notice and bidding, and participation of non-creditors to secure the best price available for the debtor's property. In contract forfeitures in Iowa, notice is generally received only by the contract buyers, no other creditors are involved, and the buyers have a mere 30 days to

cure the default to avoid loss of their equitable interests. Unlike tax sales, contract forfeitures do not provide debtors with protections similar to [foreclosure by sale] ....

*Grady,* 202 B.R. at 126.[20] Thus, in determining whether the protections of *BFP* apply in respect of a foreclosure-type procedure, *Grady* requires that the bankruptcy court evaluate the similarity of that procedure to the foreclosure-by-sale procedure dealt with in *BFP.*

■ This court concludes that the *Grady* test is the appropriate test for determining the applicability of *BFP.* Here, the court concludes that the Connecticut strict foreclosure procedure outlined in subpart C of this memorandum, above, is "sufficiently dissimilar from mortgage foreclosure by sale that *BFP* does not apply." *Grady,* 202 B.R. at 126. Neither judicial oversight nor the technical ability of the mortgagor to elect a foreclosure by sale in lieu of strict foreclosure makes up for the absence of an *actual* public foreclosure sale. Accordingly, *Carr* remains valid precedent and the issue of REV may be litigated in the Avoidance Action.

3. *REV: "Sufficiently Serious Questions Going to the Merits"*

■ Based upon FNMA's own appraisal, the Debtor had approximately $20,000 in equity in the Property at the time of foreclosure.[21] Twenty thousand dollars represents about 13% of the value stated in the Appraisal. However, under a proper REV analysis, that is not the only factor influencing the REV determination.[22] Here, the subject transfer was in-

---

**20.** Both *Vermillion* and *Grady* appear to deal with nonjudicial procedures.

**21.** The court does not decide whether FNMA or the Debtor might, by amendment to the complaint or otherwise, be permitted to prove a different Property valuation in the Avoidance Action.

**22.** I realize that the relationship of debt to property value in this case appears to satisfy

the so-called "seventy-percent rule" for nonavoidability in Section 548 cases that some courts have attributed to *Durrett v. Washington Nat'l Ins. Co.,* 621 F.2d 201, 203 (5th Cir.1980) (abrogated by *BFP* ). However, at most, that so-called "rule" is a "useful guideline" for courts applying the REV standard. *In re Littleton,* 888 F.2d at 93. *See also Allard v. Hilton (In re Chomakos),* 170 B.R. 585, 591 (Bankr.E.D.Mich.1993) (finding that 70% rule

voluntary rather than voluntary. Moreover, in absolute terms, $20,000 is not an insignificant amount. That amount might be deemed more significant in the context of this consumer bankruptcy case: the total of all assets other than the Property scheduled by the Debtor in this case is only about $8,700.[23] Based upon the foregoing, the court concludes that there are "sufficiently serious questions going to the merits" of the REV issue to deny the Motion (subject to the conditions discussed below).

### E.  Conditions on Continuation of Stay of Ejectment Action

At the hearing on the Motion, counsel for the Debtor conceded that unless the Debtor prevails in the pending litigation, she will be liable to FNMA for her postpetition use and occupancy of the Property. *See Cavallo,* 188 Conn. at 289, 449 A.2d 988. As noted above, the Debtor has committed to make substantial monthly "deposits" into "escrow" with her counsel pending confirmation of the Chapter 13 plan. The court deems it appropriate that the Debtor's monthly "escrow deposits" serve as security for payment of her use and occupancy obligation to FNMA. Accordingly, the court conditions the continued stay of the Ejectment Action on the Debtor's (and the "escrow agent's") compliance with the terms of the order which is to be entered in connection with this memorandum and which provides (provided that the Debtor and the "escrow agent" so consent) for such security and the con-

tinuation of such monthly "escrow deposits".

### III. CONCLUSION

For the reasons set forth above, the Motion shall be denied except to the extent of the relief granted to FNMA in the order entered in connection with this memorandum.

### ORDER CONDITIONING CONTINUATION OF AUTOMATIC STAY AND GRANTING CERTAIN OTHER RELIEF

Pursuant to 11 U.S.C. §§ 362(d) and 105 and Fed.R.Bankr.P. 4001, on Federal National Mortgage Association's ("FNMA") Motion For Relief from Stay filed May 11, 1999 (the "Motion") and the above-referenced debtor's (the "Debtor") Amended Objection to Motion For Relief from Stay filed June 7, 1999, and after a hearing held on July 7, 1999 on notice to all persons required by law, and for the reasons set forth in that certain Memorandum of Decision on Motion for Relief from Automatic Stay (the "Memorandum of Decision") of even date herewith, it is hereby

**ORDERED** that, except to the extent of the relief granted below, the Motion is hereby denied; and it is further

**ORDERED** that the continuation of the automatic stay of the Ejectment Action (as that term is defined in the Memorandum of Decision) in effect in this case pursuant to Bankruptcy Code § 362 is conditioned upon the following:

is not "mechanically controlling"), *aff'd,* 69 F.3d 769 (6th Cir.1995), *cert. denied,* 517 U.S. 1168, 116 S.Ct. 1568, 134 L.Ed.2d 667 (1996) (citation and internal quotation marks omitted). *Cf. BFP,* 511 U.S. at 536–37, 114 S.Ct. 1757 (rejecting 70% "rule"). Accordingly, a transfer which fails to satisfy the "rule" still can satisfy the REV standard, *see Noone v. St. Cyr (In re Noone),* 188 B.R. 710 (Bankr. D.Mass.1995) (56%), and a transfer which satisfies the "rule" still can fail to satisfy the REV standard, *see Case v. TBAC–Prince Gardner, Inc. (In re Prince Gardner, Inc.),* 220 B.R. 63 (Bankr.E.D.Mo.1998) (sale price of person-

al property was approximately 94% of fair market value but difference between value of assets and value received was more than $500,000). That is because REV analysis is more than a simple mathematical computation. *See Grissom v. Johnson (In re Grissom),* 955 F.2d 1440, 1445 (11th Cir.1992) (abrogated on other grounds by *BFP* ).

23. *See* Schedule B (Personal Property). Judge Dabrowski may deem relevant other factors (positive or negative) which may be developed in the course of the Avoidance Action.

a. from and after the date of this Order, the Debtor's deposit/of good funds "into escrow" with her counsel of record in this action in the same amount and on the same schedule as the payments under the Note and Mortgage (as those terms are defined in the Memorandum of Decision) were due;

b. the Debtor's agreement that all "escrow funds" heretofore or hereafter deposited by her and held by her counsel of record with respect to the Property (as that term is defined in the Memorandum of Decision) shall secure payment of her postpetition use and occupancy obligation (the "U & O Obligation") to FNMA in respect of the Property.[1] The Debtor's execution of a counterpart (the "Counterpart") of this Order shall constitute her agreement to the foregoing; and

c. the agreement of the Debtor's/counsel of record in this action, as "escrow agent":

(i) to hold all "escrow funds" now in or hereafter coming into his possession, custody or control in respect of the Property segregated from all other funds and in a federally-insured, interest-bearing account standing in his name as "escrow agent"; and

(ii) not to release any such "escrow funds" except upon either (x) the express written consent of FNMA, the Debtor and the Chapter 13 trustee or (y) further order of this court issued after a hearing on notice to the Debtor, the "escrow agent", FNMA, and the Chapter 13 trustee; and

(iii) to confirm, from time to time, the status of the Debtor's compliance with subparagraph a, above, in response to FNMA's and/or the Chapter 13 trustee's written request for such confir-

mation as such request may be made by FNMA and/or the Chapter 13 trustee in writing from time to time. Execution by the "escrow agent" of the Counterpart will constitute the "escrow agent's" agreement to the foregoing;

and it is further

**ORDERED** that the Counterpart shall be filed with the court and served upon counsel for FNMA and the Chapter 13 trustee no later than the tenth (10th) day following the date of this Order. If FNMA shall file with this court and serve upon the Debtor, her counsel and the Chapter 13 trustee an affidavit stating that the Counterpart has not been so filed and served, and no affidavit to the contrary has been filed and served by the Debtor upon counsel for FNMA and the Chapter 13 trustee within ten (10) days thereafter, on the written *ex parte* request of FNMA an order shall issue lifting the stay of the Ejectment Action. If counter-affidavit is timely filed and served by the Debtor upon counsel for FNMA and the Chapter 13 trustee, on the written *ex parte* request of FNMA the matter will be set down for a hearing by the court on notice to FNMA, the Debtor, her counsel and the Chapter 13 trustee; and it is further

**ORDERED** that, if the Debtor and/or the "escrow agent" fail to comply with their respective agreements or obligations in accordance herewith, or if the Motion To Reopen and the Avoidance Action (as those terms are defined in the Memorandum of Decision) are finally adjudicated in a manner adverse to the Debtor, FNMA may file and serve upon the Debtor, her counsel and the Chapter 13 trustee an affidavit detailing such non-compliance or adverse adjudication. If no affidavit to the contrary has been filed and served by the Debtor upon counsel for FNMA and the Chapter 13 trustee within ten (10) days

---

1. The amount of the U & O Obligation shall hereafter be determined by the court (after a hearing on notice) if requested by either FNMA, the Debtor or the Chapter 13 trustee.

The "deposits" provided for in subparagraph a of this Order may be ordered increased (but not decreased) as a result of such determination.

thereafter, on the written *ex parte* request of FNMA an order shall issue lifting the stay of the Ejectment Action. If a counter-affidavit is timely filed and served by the Debtor upon counsel for FNMA and the Chapter 13 trustee, on the written *ex parte* request of FNMA the matter will be set down for a hearing by the court on notice to FNMA, the Debtor, her counsel and the Chapter 13 trustee; and it is further

**ORDERED** that the continuation of the automatic stay in effect in this case pursuant to Bankruptcy Code § 362 is hereby modified (on a *nunc pro tunc* basis to the extent required) to permit the Debtor to file and prosecute (and FNMA to defend) the Motion To Reopen; *provided, however,* any reopened, amended or otherwise altered or modified judgment entered by the state court as a result of such filing and prosecution shall not be enforced without further order of this court.