**In re John L. WENTWORTH, Theresa T. Wentworth, Debtors.**

**Theresa T. WENTWORTH, Neal Ossen, Trustee, Plaintiffs,**

v.

**TOWN OF ACTON, MAINE, Defendant.**

Bankruptcy No. 97–23037.
Adversary No. 97–2139.

United States Bankruptcy Court,
D. Connecticut.

May 18, 1998.

George M. Purtill, Purtill, Purtill & Pfeffer, Glastonbury, CT, for Plaintiffs.

Robert C. Reichert, Reid and Riege, P.C., Hartford, CT, for Defendant.

### *RULING ON CROSSMOTIONS FOR SUMMARY JUDGMENT*

ROBERT L. KRECHEVSKY, Bankruptcy Judge.

### I.

### *ISSUE*

Before the court are cross-motions for summary judgment on the issue of whether a non-judicial strict foreclosure of a town tax lien ("the forfeiture procedure") conducted pursuant to a state law may constitute an avoidable fraudulent transfer under Bankruptcy Code § 548 where there is a one to thirteen ratio between the amount of the tax lien and the value of the property. The co-plaintiffs are Theresa T. Wentworth, the debtor, and Neal Ossen, trustee of the debtors' joint Chapter 7 estate (together, "the

plaintiffs"). The defendant is the Town of Acton, Maine which, prepetition, had filed a tax lien and subsequently obtained title by way of the forfeiture procedure to the debtor's property located in Acton. The parties' contentions in their respective motions revolve around the proper construction and application of the U.S. Supreme Court's ruling in *BFP v. Resolution Trust Corp.*, 511 U.S. 531, 114 S.Ct. 1757, 128 L.Ed.2d 556 (1994), which specifically left unresolved the issue presented by this proceeding.

### II.

### *BACKGROUND*

Prior to 1995, the debtor held unencumbered title to 3.4 acres of unimproved real property ("the property") which the defendant assessed for $20,700.[1] The debtor did not pay the 1995 property taxes of $248.40, due in two installments on October 1, 1994 and April 1, 1995. The defendant, on May 25, 1995, sent the debtor a "Tax Collector's Notice, Lien Claim and Demand," notifying the debtor that the defendant was claiming a lien on the property and demanding payment of $262.91 within thirty days. When no payment was received, the defendant, on June 29, 1995, recorded a Tax Collector's Lien Certificate on the land records. The defendant, on November 29, 1996, sent the debtor a "Notice of Impending Automatic Foreclosure" advising that the June 29, 1995 tax lien "has created a tax lien mortgage" on the property and that "on December 29, 1996, the tax lien mortgage will be foreclosed and your right to recover your property by paying the taxes, interest and costs that are owed will expire." *Pl.'s Exh. C.* The taxes and costs then due totaled $332.13.

On January 15, 1997, the defendant sent the debtor a letter stating that the defendant had foreclosed on her property and that ownership had been transferred to the defendant, but that the debtor could redeem the property for payment by March 29, 1997 in the total amount of $1,515.63 (representing taxes, interest to March 29, 1997, costs, and a

---

1. The assessment is based upon a property's market value. *See* ME CONST art. 9, § 8 ("All taxes upon real (3)27 estate (3)27 shall be apportioned and assessed equally according to the just value thereof."); *Quoddy Realty Corp. v. City of Eastport,* 704 A.2d 407, 409 (1998) (" 'Just value' means market value." (citations omitted)).

$200 administrative fee). The debtor did not timely redeem.

The debtor filed her Chapter 7 petition, jointly with her husband, on July 8, 1997. On July 14, 1997, she tendered a check in the amount of $1,550 to the defendant in payment of the back taxes. The defendant refused to accept the check. The defendant's attorney, on July 16, 1997, wrote to the debtor stating that the defendant now owned the property and "will not agree to accept any payment at this time for the unpaid 1995 taxes." *Pl.'s Exh. H.* The letter further advised that when the defendant auctioned the property, the debtor "will be allowed to bid at the public auction and can attempt to reacquire the property."

The plaintiffs' complaint, filed on July 21, 1997, alleges in material part that the defendant's foreclosure of its tax lien on December 29, 1996, when the debtor was insolvent, constituted an avoidable transfer under § 548 because the debtor received less than a reasonably equivalent value in exchange for such transfer. The defendant defends on the ground that an insolvent debtor's transfer of property pursuant to a "noncollusive tax foreclosure conducted in conformance with applicable Maine law" is not a fraudulent transfer because the debtor received "reasonably equivalent value." *Def.'s Mot. Summ. J.* at 2.

### III.

#### DISCUSSION

##### A.

For purposes of this ruling, the court finds that there are no genuine issues as to any material fact. Fed.R.Civ.P. 56(c), made applicable in bankruptcy proceedings by Fed. R. Bankr.P. 7056, provides that summary judgment shall be rendered in such circumstances.[2]

##### B.

Under Maine law, a town can enforce unpaid real property taxes by notifying the person against whom the tax is assessed that a lien to secure unpaid taxes is claimed and demanding payment within 30 days. 36 ME. REV. STAT. ANN. tit. 36, § 942 (West, WESTLAW through 1997 First Sp. Sess.). The notice, which must be provided between eight months and one year after the date the tax was committed, must state the amount of tax and describe the real estate. *Id.* If the taxes remain unpaid, within ten days after the thirty days has expired the tax collector must record a tax lien certificate setting forth the amount of the tax and a description of the property and alleging that a lien is claimed on the property to secure payment of the tax, that demand for payment has been made, and that the tax remains unpaid. *Id.* The tax lien certificate creates a tax lien mortgage, with priority over all other encumbrances, in favor of the town. *Id.* § 943. If the tax lien mortgage, interest, and costs remain unpaid eighteen months after the date the tax lien certificate was filed, the mortgage is deemed to have been foreclosed and the right of redemption deemed to have expired. *Id.* The party named on the tax lien mortgage must be notified between thirty and forty-five days before the foreclosure. *Id.* The Maine Supreme Court has analogized this method of enforcing unpaid real property taxes to "strict foreclosure" of a mortgage. *See Avco Delta Fin. Corp. v. Town of Whitefield,* 295 A.2d 921, 924 (Me.1972) ("The provisions of 36 M.R.S.A. §§ 942 and 943 delineate a mechanism to achieve tax collections characterized by the concepts of a tax lien mortgage deemed 'strictly' foreclosed by the mere expiration of a specified period of time after the occurrence of a particular event and on the basis of which, without more and automatically, a transfer of title to the municipality is achieved." (citations omitted)).

##### C.

Bankruptcy Code § 548 provides that:

(a) The trustee may avoid any transfer of an interest of the debtor in property, or any obligation incurred by the debtor, that was made or incurred on or within one year before the date of the filing of the

---

**2.** The debtor's allegations that certain actions of the defendant's employees estop the defendant from claiming title need not be resolved in light of this ruling.

petition, if the debtor voluntarily or involuntarily—

. . .

(2)(A) received less than a reasonably equivalent value in exchange for such transfer or obligation; and

(B)(i) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation. . . .

11 U.S.C. § 548.

In the case at bar, the property was transferred to the defendant via the forfeiture procedure within one year before the debtor filed her Chapter 7 petition, and the plaintiffs assert, and the defendant does not deny, that the debtor was insolvent when the transfer occurred or became insolvent as a result of the transfer. The plaintiffs contend that the transfer is avoidable under § 548 because Maine's forfeiture procedure for a non-judicial "strict foreclosure" of a tax lien, without a sale to disinterested third persons or a public auction, did not, under the circumstances of this proceeding, provide the debtor with "a reasonably equivalent value" in exchange for the property foreclosed upon. The defendant argues that under *BFP*, the defendant's forfeiture procedure provided reasonably equivalent value to the debtor.

The Supreme Court in *BFP* rejected fair market value as the benchmark for measuring reasonably equivalent value and held that the consideration received from a noncollusive real estate mortgage foreclosure sale that conforms to applicable state law is "reasonably equivalent value" under § 548(a)(2) of the Code. 511 U.S. at 545, 114 S.Ct. at 1765, 128 L.Ed.2d at 569. In a footnote, the Court emphasized that its opinion covered only mortgage foreclosures of real estate and that "[t]he considerations bearing upon other foreclosures and forced sales (to satisfy tax liens, for example) may be different." 511 U.S. at 537 n. 3, 114 S.Ct. at 1761 n. 3, 128 L.Ed.2d at 564 n. 3.

Citing recent decisions that have applied *BFP* to tax foreclosure sales, the defendant contends that "[f]or the purposes of a reasonably equivalent value analysis, there can be no difference between a tax foreclosure by sale or a tax foreclosure by forfeiture. In either case, just like private foreclosure sales, the concept of market value is meaningless and 'equivalence' must be measured by compliance with state mandated procedures." *Def.'s Resp.* at 10–11.

No reported decisions address whether *BFP* applies to tax forfeiture procedures. The cases that have extended *BFP* to tax foreclosure sales have generally compared the protections offered to the property owner under the state's mortgage foreclosure and tax foreclosure statutes and found that the property owner is at least as well protected in a tax foreclosure proceeding as in a mortgage foreclosure. One protection emphasized is that under both the mortgage and tax foreclosure procedures, a sale involving competitive bidding occurs. *See T.F. Stone Co., Inc. v. Harper (In re T.F. Stone Co., Inc.)*, 72 F.3d 466, 471 (5th Cir.1995) ("That Bryan County's sale to the Kidds was a tax sale rather than a mortgage foreclosure sale does not change the reality that it was a forced sale."); *Russell–Polk v. Bradley (In re Russell–Polk)*, 200 B.R. 218, 222 (Bankr. E.D.Mo.1996) ("Once a tax foreclosure sale is commenced, the subject property is opened to the competitive bidding system, very much like a mortgage foreclosure sale."); *In re Hollar*, 184 B.R. 243, 252 (Bankr.M.D.N.C. 1995) ("The similarities between the two types of forced sales is clear after examination of the procedural safeguards afforded to them. In each instance, the applicable statute requires posting of a public notice of sale. Both types of sale are conducted by public auction with competitive bidding."); *In re Lord*, 179 B.R. 429, 435 (Bankr.E.D.Pa.1995) ("Each statutory scheme contemplates competitive bidding pursuant to prescribed bidding procedures. . . ."); *In re McGrath*, 170 B.R. 78, 81 (Bankr.D.N.J.1994) ("With both types of foreclosure, there must be public notice of the sale under the applicable statutes to encourage competitive bidding.").

The rationale of the cases extending *BFP* to tax foreclosure sales does not apply to the instant matter because under Maine's forfeiture procedure for foreclosure of tax liens, the property was transferred without the possibility of judicial oversight, without com-

petitive bidding, and without a public sale.[3] The *BFP* Court characterized foreclosure as "completely redefining the market in which the property is offered for sale; normal free-market rules of exchange are replaced by the far more restrictive rules governing forced sales." 511 U.S. at 548, 114 S.Ct. at 1767, 128 L.Ed.2d at 571. Consequently, "the only legitimate evidence of the property's value at the time it is sold is the foreclosure-sale price itself." 511 U.S. at 549, 114 S.Ct. at 1767, 128 L.Ed.2d at 571. Unlike a forced sale,[4] whether a mortgage foreclosure sale as in *BFP*, or a tax foreclosure sale as in the above-cited cases, Maine's forfeiture procedure eliminates rather than redefines the market. While the forced sale price may be legitimate evidence of the property's value, the amount of a tax lien is *no* evidence whatsoever of the property's value. *Cf. Dunbar v. Johnson (In re Grady)*, 202 B.R. 120, 125 (Bankr.N.D.Iowa 1996) (holding that *BFP* does not apply to forfeiture of a real estate contract under Iowa law because "where no sale occurs, the only barometer to determine value is the amount of any debt remaining on the sale contract. This amount has no relationship to market forces.... [and] could be minuscule and bear no relationship to reasonably equivalent value.").

The defendant argues that *BFP* dictates that the court must identify a "clear and manifest" statutory purpose to displace Maine's scheme of tax foreclosure by forfeiture. The Supreme Court in *BFP* held that a "clear and manifest" federal statutory purpose must exist to displace traditional state regulation of foreclosure sales because displacement would have a "profound" effect on the "essential state interest" of securing titles to real estate by placing "[t]he title of every piece of realty purchased at foreclosure...under a federally created cloud." 511 U.S. at 544, 114 S.Ct. at 1765, 128 L.Ed.2d at 568. The defendant's ability to take title to real property through Maine's

forfeiture procedure is not an essential state interest that is comparable to the state's ability to regulate foreclosure sales. Maine law provides other methods by which municipalities can enforce unpaid real property taxes. *See* 36 ME. REV. STAT. ANN. tit. 36, §§ 941, 1071 (West, WESTLAW through 1997 First Sp. Sess.). Furthermore, this ruling does not "displace" Maine's forfeiture procedure but merely impinges on it to the extent that forfeited properties may be the subject of § 548 fraudulent transfer actions. *Cf. Bondholder Comm. v. Williamson County (In re Brentwood Outpatient, Ltd.)*, 43 F.3d 256, 265 (6th Cir.1994). *cert. denied*, 514 U.S. 1096, 115 S.Ct. 1824, 131 L.Ed.2d 745 (1995) (holding that § 506(b) of the Bankruptcy Code bars a county from collecting statutory costs and attorney's fees associated with delinquent real property taxes and that "[t]he federal bankruptcy power may constitutionally impinge on the state taxing power just as the federal commerce power prevents the states from enacting discriminatory taxes on out-of-state businesses," and citing *Garcia v. San Antonio Metro. Transit Auth.*, 469 U.S. 528, 554, 105 S.Ct. 1005, 1019, 83 L.Ed.2d 1016, 1036 (1985) for the proposition that "[the county] faces nothing more than the same [rules of bankruptcy] that hundreds of thousands of other [creditors], public as well as private, have to meet.").

## IV.

### CONCLUSION

The court concludes that the transfer of a debtor's real property with a market value of $20,700 for a tax lien of $1,515.63, pursuant to the forfeiture procedure, is not for reasonably equivalent value. Consequently, the transfer is a fraudulent transfer pursuant to § 548. Bankruptcy Code § 550(a) authorizes the court to order the recovery of the property transferred.

---

**3.** Maine statutes also provide for enforcement of tax liens through foreclosure by sale procedures. *See* 6 ME. REV. STAT. ANN. tit. 36, §§ 941, 1071 (West, WESTLAW through 1997 First Sp. Sess.). Excess equity in the property is returned to the property owner under these statutes.

**4.** A forced sale is "[a] sale which is not the voluntary act of the owner, such as to satisfy a debt, whether of a mortgage, judgment, tax lien, etc." BLACK'S LAW DICTIONARY 580–81 (5th ed.1979).

The court grants the plaintiffs' motion for summary judgment and denies the defendant's motion. A judgment will enter ordering the defendant to transfer title to the property to the debtor subject to all unpaid real estate taxes.

It is SO ORDERED.