In re Terence E. TALBOT, Lois
M. Talbot, Debtors.

Terence E. Talbot & Lois
M. Talbot, Plaintiffs,

v.

Federal Home Loan Mortgage
Corporation, Defendant.

Bankruptcy No. 00–20682.
Adversary No. 00–2031.

United States Bankruptcy Court,
D. Connecticut.

Oct. 12, 2000.

Elaine K. Stuhlman, Wethersfield, CT,
for plaintiffs-debtors.

Thomas J. Farrell, Hunt Leibert Chester & Jacobson, P.C., Hartford, CT, for
defendant.

*RULING ON MOTION TO DISMISS COMPLAINT*

ROBERT L. KRECHEVSKY,
Bankruptcy Judge.

## I.

### ISSUE

The overriding question presented is whether a Connecticut state-court judgment of strict foreclosure of a real estate mortgage, under the United States Supreme Court doctrine announced in *BFP v. Resolution Trust Corporation,* 511 U.S. 531, 114 S.Ct. 1757, 128 L.Ed.2d 556 (1994) (*"BFP"*), conclusively satisfies the provision of Bankruptcy Code § 548(a)(1)(B)(i) [1] , under the allegations of the complaint, that a "reasonably equivalent value" be received in exchange for the transfer occasioned by the foreclosure of the debtors' equity of redemption.[2] The question is directly raised by the defendant's motion to dismiss a complaint [3] brought by Chapter 13 debtors to avoid, as a constructively fraudulent transfer, a pre-petition state-court judgment of strict foreclosure of the mortgage on their residence.

## II.

### BACKGROUND

Terence E. Talbot and Lois M. Talbot ("the debtors") filed a joint bankruptcy petition under Chapter 13 of the Bankruptcy Code on March 15, 2000. Their complaint, as amended on June 19, 2000 ("the complaint"), alleges that on November 2, 1999 Federal Home Loan Mortgage Corporation ("FHLMC"), the defendant, commenced a mortgage-foreclosure action in the Connecticut Superior Court on a mortgage and note, executed by the debtors in 1994, on their residence at 117 Woodmont Street, East Hartford, Connecticut ("the property"). That court subsequently defaulted the debtors for their failure to appear, and on December 13, 1999, entered a judgment of strict foreclosure. The judgment found the fair market value of the property to be $158,000, the outstanding indebtedness to be $137,-406.12, and established January 31, 2000 as the last day for the debtors to redeem the property. The debtors did not redeem and on February 2, 2000, absolute title to the property vested in FHLMC.[4] FHLMC, on February 4, 2000, filed a Certificate of Foreclosure on the East Hartford Land Records.

The complaint avers that the state court determined the fair market value of the property to be $158,000 based upon an affidavit submitted by an appraiser; that FHLMC had earlier submitted to the debtors an appraisal dated April 30, 1999 which indicated a fair market value of $142,000; and that the fair market value of the property on February 2, 2000 was

---

1.  11 U.S.C. § 548(a)(1) provides, in relevant part:

    (a)(1) The trustee may avoid any transfer of an interest of the debtor in property, or any obligation incurred by the debtor, that was made or incurred on or within one year before the date of the filing of the petition, if the debtor voluntarily or involuntarily—

    . . .

    (B)(i) received less than a reasonably equivalent value in exchange for such transfer or obligation; and
    (ii)(I) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation;

2.  11 U.S.C. § 101(54) provides that "transfer" includes "foreclosing of the debtor's equity of redemption."

3.  Fed.R.Civ.P. 12(b)(6) permits a motion to dismiss a complaint based upon a defense of "failure to state a claim upon which relief can be granted." Fed.R.Bank.P. 7012(b) makes Rule 12(b) applicable in adversary proceedings.

4.  The apparent discrepancy in dates is explained by the debtors' bankruptcy schedules which list Bank Boston as a second encumbrancer on the property, holding a judgment lien, dated May 1, 1999, for $14,041.62. Bank Boston, whose law day thus would have been February 1, 2000, obviously did not redeem.

$170,000. The complaint seeks to avoid the transfer of the debtors' equity of redemption to FHLMC as constructively fraudulent under § 548(a)(1)(B), claiming that the debtors received less than a reasonably equivalent value in exchange for such transfer, and that the debtors became insolvent as a result of such transfer. The debtors request that the "Court enter an order avoiding the entire transfer." (Complaint at ¶ 13.)

## III.

## CONTENTIONS OF THE PARTIES

FHLMC cites the *BFP* ruling that, as a matter of law, the "reasonably equivalent value" of a debtor's interest in property sold at a mortgage foreclosure sale conducted in accordance with state law requirements is the price actually received. *BFP*, 511 U.S. at 545, 114 S.Ct. 1757. *BFP* rejected the argument that "reasonably equivalent value" means fair market value. *Id.* FHLMC argues that, because strict foreclosure proceedings under Connecticut law provide a mortgagor with procedural safeguards comparable to those in the foreclosure sale context analyzed in BFP, this court should similarly conclude, under the debtors' complaint, that the debtors whose property was so transferred has, as a matter of law, received its "reasonably equivalent value." FHLMC also contends that the debtors lack standing to bring an action under § 548, and that the court lacks jurisdiction over the property.[5]

The debtors deny *BFP* is controlling because there was no public sale involved in the foreclosure, and rely on the following three rulings from the bankruptcy and district courts of this district to support their contention that the transfer of title by strict foreclosure may be a fraudulent transfer under § 548(a)(1)(B) if the indebtedness under the mortgage note is less than the fair market value of the property

on the date title is transferred. *In re Fitzgerald*, 237 B.R. 252 (Bankr.D.Conn. 1999) (in a relief from stay ruling, court found sufficient question as to *BFP's* application to Connecticut strict foreclosure proceedings to warrant denial of request of mortgagee-transferee to seek possession of property when debtor's avoidance action was pending[6]); *Wentworth v. Town of Acton, Maine (In re Wentworth)*, 221 B.R. 316 (Bankr.D.Conn.1998) (this court avoided, under § 548(a), a nonjudicial Maine tax forfeiture of property with fair market value of 13 times the debt); *Demusis v. Carr (In re Carr)*, 40 B.R. 1007 (D.Conn.1984) (pre-*BFP* ruling by district court that passage of title under strict foreclosure was avoidable under § 548 if debt was less than fair market value of property).

## IV.

## DISCUSSION

In considering a motion to dismiss under Fed.R.Civ.P. 12(b)(6), the court "must construe any well-pleaded factual allegations in the complaint in favor of the plaintiff." *Sykes v. James*, 13 F.3d 515, 518 (2d Cir. 1993). The motion must be denied "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80, 84 (1957).

Section 548(a)(1)(B) permits a bankruptcy trustee to avoid any transfer of an interest of a debtor in property, defined in § 101(54) to include foreclosure of a debtor's equity of redemption, made within one year prior to the filing of the bankruptcy petition if the debtor received less than a "reasonably equivalent value" for the transfer and either was insolvent at the time of the transfer or became insolvent as a result of it. Because the factual allegations of the complaint are presumed true

---

5. Other arguments made by FHLMC need not be considered in light of the court's ruling.

6. *See* Denis R. Caron, *Connecticut Foreclosures* ¶ 21.03B (3d ed.1997) (application of *BFP* principles to "Connecticut's unique form of strict foreclosure" uncertain).

for the purposes of such a motion, the only issues before the court are whether the debtors have standing to bring their complaint, the jurisdiction of the court over the property and whether, based on the complaint's allegations, the satisfaction of the debtors' mortgage debt under a Connecticut strict foreclosure proceeding conclusively constituted the "reasonably equivalent value" of the property interest transferred.

### A. Jurisdiction

### Standing of the Debtors

■ The court first addresses the jurisdictional issue raised by FHLMC, whether the debtors have standing to bring a § 548 avoidance action. Where the trustee does not attempt to avoid a transfer of property under § 548, Section 522(h) [7] authorizes a debtor to do so to the extent that the debtor could have exempted such property under § 522(g)(1) [8] if it had been recovered by the trustee. Section 522(g)(1) permits a debtor to exempt property recovered by the trustee under § 548 if (1) the transfer was involuntary, and (2) the debtor did not conceal the property. Here the require-

ments of § 522(a)(1) have been met since the property was involuntarily transferred pursuant to a judgment of strict foreclosure and there has been no concealment. *Also see Miller v. Brotherhood Credit Union (In re Miller)*, 251 B.R. 770, 771 (Bankr.D.Mass.2000) ("Chapter 13 debtor [may] bring an avoidance action if: (1) the trustee could have brought such action; (2) the trustee did not bring the action; (3) the transfer was involuntary and the debtor did not conceal the property …; and (4) the debtor could have exempted such property had the trustee actually avoided the transfer.") (citation omitted). The debtors may bring the present action to avoid the transfer of the property in the same manner and subject to the same limitations as the trustee, *see* § 522(i)(1) [9], except that any property so recovered may be preserved for the benefit of the debtor, rather than for the benefit of the bankruptcy estate, to the extent it may be exempt. 11 U.S.C. § 522(i)(2).[10]

### Jurisdiction over the Property

■ FHLMC also argues that the court lacks jurisdiction because the property,

---

**7.** 11 U.S.C. § 522(h) provides:

(h) The debtor may avoid a transfer of property of the debtor or recover a setoff to the extent that the debtor could have exempted such property under subsection (g)(1) of this section if the trustee had avoided such transfer, if—

(1) such transfer is avoidable by the trustee under section 544, 545, 547, 548, 549, or 724(a) of this title or recoverable by the trustee under section 553 of this title; and

(2) the trustee does not attempt to avoid such transfer.

**8.** 11 U.S.C. § 522(g) provides:

(g) Notwithstanding sections 550 and 551 of this title, the debtor may exempt under subsection (b) of this section property that the trustee recovers under section 510(c)(2), 542, 543, 550, 551, or 553 of this title, to the extent that the debtor could have exempted such property under subsection (b) of this section if such property had not been transferred, if—

(1) (A) such transfer was not a voluntary transfer of such property by the debtor; and

(B) the debtor did not conceal such property; or

(2) the debtor could have avoided such transfer under subsection (f)(2) of this section.

**9.** 11 U.S.C. § 522(i)(1) provides:

(i)(1) If the debtor avoids a transfer or recovers a setoff under subsection (f) or (h) of this section, the debtor may recover in the manner prescribed by, and subject to the limitations of, section 550 of this title, the same as if the trustee had avoided such transfer, and may exempt any property so recovered under subsection (b) of this section.

**10.** 11 U.S.C. § 522(i)(2) provides:

(2) Notwithstanding section 551 of this title, a transfer avoided under section 544, 545, 547, 548, 549, or 724(a) of this title, under subsection (f) or (h) of this section, or property recovered under section 553 of this title, may be preserved for the benefit of the debtor to the extent that the debtor may exempt such property under subsection (g) of this section or paragraph (1) of this subsection.

having been transferred prior to the commencement of the debtors' bankruptcy case, is not property of the bankruptcy estate. Although FHLMC's premise is correct, this argument lacks merit. Whether the transferred property becomes part of the debtors' estate depends on whether the transfer is avoided under § 548. The case cited by FHLMC in support of its position, *Bluford v. First Fidelity Mortgage Co. (In re Bluford),* 40 B.R. 640 (Bankr.W.D.Mo.1984) (concerning debtors' voluntary sale of property after Chapter 13 proceedings had been dismissed and before they were subsequently reinstated), is inapposite to this proceeding. *Cf. FDIC v. Hirsch (In re Colonial Realty),* 980 F.2d 125, 131 (2d Cir.1992) ("pursuant to 11 U.S.C. § 541(a)(3) (1988), the property of a bankruptcy estate also includes any interest in property that the trustee recovers under specified Bankruptcy Code provisions, including 11 U.S.C. § 550 (1988). Section 550 authorizes a trustee to recover transferred property for the benefit of the estate to the extent that a transfer is avoided, inter alia, as fraudulent under either 11 U.S.C. § 544 (1988) or § 548 (1988 & Supp. II 1990)") (internal quotation marks omitted).

### B. Overview of Connecticut Foreclosure Law

Because an understanding of Connecticut foreclosure law is indispensable to the analysis that follows, the court refers to Judge Weil's comprehensive summary thereof in *Fitzgerald:*

> Connecticut is considered a "title theory" state wherein the mortgagor pledges property to the mortgagee as security for a debt and conveys "legal title" to the mortgaged premises; the mortgagor retains "equitable title" or the "equity of redemption." The equity of redemption permits the mortgagor to regain legal title to the mortgaged property upon satisfying the conditions of the mortgage, which usually entails the payment of the mortgage debt in full.

An action to foreclose a mortgage of real property is commenced by the service and filing of a complaint for foreclosure. The mortgagee's motion for judgment must be served with a copy of an appraisal report stating the value of the subject property. Connecticut provides for the foreclosure of a mortgage of real property by either public sale or by strict foreclosure. The property is foreclosed by strict foreclosure unless the court orders foreclosure by sale. The foreclosure court has the discretion to order foreclosure by sale on the motion of a party if there is "substantial equity" in the property for the mortgagor or junior encumbrancers.

If strict foreclosure is ordered, the court, in its discretion, sets the redemption period, or "law day", for the owner of the equity of redemption, and directs that subsequent days be given subsequent encumbrancers in the inverse order of their priorities. When there is little or no equity in the property, the redemption period is short. In cases where there is equity in the property but foreclosure by sale has not been ordered, a longer redemption period may be set by the foreclosure court in its discretion. Such longer redemption period is intended to give the mortgagor an opportunity to pay the mortgage debt by selling the property or refinancing the mortgage debt. Prior to the passage of each "law day", each respective defendant in the foreclosure action may redeem the property (and obtain title thereto) by paying the foreclosing mortgagee in full. The passing of the first law day without redemption by the mortgagor extinguishes the mortgagor's right of redemption and unconditional legal title vests in the "redeeming encumbrancer" or, if none, the mortgagee. The redeeming encumbrancer, if any, or the mortgagee is required by statute to file a certificate of foreclosure asserting "absolute" title. Consequently, the mortgagor is divested of equitable title and the ability to obtain legal title, and

has no remaining title or interest which he may convey.

After the mortgagor's equity of redemption is extinguished, the former mortgagor then holds a bare possessory interest as a tenant at sufferance and the new owner of the property is entitled to receive use and occupancy payments from the mortgagor. If the foreclosure court enters judgment for the mortgagee and finds that the mortgagee is entitled to possession of the subject property, the court may issue an execution of ejectment commanding all parties named in the foreclosure complaint to be ejected from the premises.

*In re Fitzgerald,* 237 B.R. at 261–62 (citations and internal quotation marks omitted).

## C. Applicability of BFP to Connecticut Strict Foreclosures

■ In *BFP,* the Supreme Court held that the price actually received for property transferred in a mortgage foreclosure sale conducted in accordance with state law is, as a matter of law, the "reasonably equivalent value" of the property and that such transfers, therefore, cannot be avoided under § 548(a)(1)(B). *BFP,* 511 U.S. at 545, 114 S.Ct. 1757. Courts interpreting and applying *BFP* in circumstances other than real estate mortgage foreclosure sales have generally focused on (1) the essential state interest in mortgage foreclosures and security of titles; (2) the significance of competitive bidding requirements; or (3) the procedural safeguards afforded a debtor under the foreclosure law of a particular state.

### Essential State Interest

The rationale given by the Supreme Court for its holding in *BFP* was that the states have an "essential interest" in the security of their real estate titles and that the Court would not impute into the phrase "reasonably equivalent value" a Congressional intent to displace that interest. The Court explained:

Federal statutes impinging upon important state interests cannot be construed without regard to the implications of our dual system of government. When the Federal Government ... radically readjusts the balance of state and national authority, those charged with the duty of legislating must be reasonably explicit. It is beyond question that an essential state interest is at issue here: We have said that the general welfare of society is involved in the security of the titles to real estate and the power to ensure that security inheres in the very nature of state government. Nor is there any doubt that the interpretation urged by [the debtor] would have a profound effect upon that interest: The title to every piece of realty purchased at foreclosure would be under a federally created cloud. To displace traditional state regulation in such a manner, the federal statutory purpose must be clear and manifest. Otherwise, the Bankruptcy Code will be construed to adopt, rather than to displace, pre-existing state law. For the reasons described, we decline to read the phrase "reasonably equivalent value" in § 548(a)[(1)(B)(i)] to mean, in its application to mortgage foreclosure sales, either "fair market value" or "fair foreclosure price" (whether calculated as a percentage of fair market value or otherwise). We deem, as the law has always deemed, that a fair and proper price, or a "reasonably equivalent value," for foreclosed property, is the price in fact received at the foreclosure sale, so long as all the requirements of the State's foreclosure law have been complied with.

*BFP,* 511 U.S. at 544–45, 114 S.Ct. 1757 (citations, internal quotation marks, footnotes and parenthetical comments omitted).

To support their contention that the court should read *BFP* narrowly to apply only to mortgage foreclosures by sale, the debtors cite *Wentworth,* in which this court

avoided a nonjudicial strict foreclosure (in effect) of a Maine tax lien where the fair market value of the property was more than 13 times the debt owed. However, the *Wentworth* ruling noted, "The defendant's ability to take title to real property through Maine's forfeiture procedure is *not an essential state interest* that is comparable to the state's ability to regulate foreclosure sales." *Wentworth*, 221 B.R. at 320 (emphasis added). Connecticut's interest in the security of the titles of property transferred under its strict foreclosure proceedings is no less compelling than its interest in the titles transferred by way of foreclosure sales. Unlike states where foreclosure by sale is the norm, real property foreclosures in Connecticut proceed as strict foreclosures in the absence of a party's motion for foreclosure by sale or the court's discretionary decision, reasonably exercised, to order a sale.

### Role of Competitive Bidding

The debtors' emphasis on the role of the competitive bidding process is not persuasive. The Supreme Court's decision in *BFP* was not predicated on a theory that a competitive bidding process provides the most accurate indication of the market forces that define a property's value. Rather, the Court held that the states, not the market, were entitled to define the "value" of property in the mortgage foreclosure context. The Court noted that in the majority of asset transfers outside of the real estate foreclosure context, "the traditional common law notion of fair market value [is] the benchmark." *BFP*, 511 U.S. at 548, 114 S.Ct. 1757. In the mortgage foreclosure context, however, the Court concluded that for 400 years, the common law recognized as "black letter law that mere inadequacy" of the amount received by a mortgagor relative to a property's fair market value provided no basis for setting the transfer aside under fraudulent conveyance law, despite the "draconian consequences of strict foreclosure,"

which was the only type of foreclosure available until the nineteenth century. *BFP*, 511 U.S. at 541, 114 S.Ct. 1757. Citing the "glaring discrepancy between the factors relevant to an appraisal of a property's market value, on the one hand, and the strictures of the foreclosure process on the other," the Supreme Court held that, "[m]arket value cannot be the criterion of equivalence in the foreclosure-sale context.... [P]roperty that must be sold within those strictures is simply worth less." *BFP*, 511 U.S. at 538–39, 114 S.Ct. 1757. The Court also rejected what it termed the "reasonable forced-sale price" as determinative of the value of foreclosed property.

The debtors reliance on *Carr* does not further their argument. In *Carr*, the district court approved avoidance, under § 548(a), of a strict foreclosure proceeding because such proceeding does not rely on the market forces that affect the price received at a public sale. Such holding now is of doubtful significance. In the wake of *BFP*, the role of the marketplace is defined by the states. The Supreme Court noted that state foreclosure law may itself permit a transfer of title to be reopened or collaterally attacked when the consideration received is "so low as to 'shock the conscience.'" *BFP*, 511 U.S. at 542, 114 S.Ct. 1757. Connecticut law provides that "a judgment of foreclosure cannot be opened after the title has become absolute in any encumbrancer.... Nevertheless, courts will recognize instances where the effect of the judgment may be collaterally attacked. Courts of equity may grant relief from the operation of a judgment when to enforce it would be unconscionable ... or [when there was] fraud, accident or mistake in connection with the entry of the original judgment of foreclosure." *City Savings Bank of Bridgeport v. Miko*, 1 Conn.App. 30, 34 n. 2, 467 A.2d 929 (1983).[11] The factual allegations of the complaint in the present

---

11. *See also* Conn.Gen.Stat. § 49–15, which provides that "no such judgment [of strict foreclosure] shall be opened after the title has become absolute in any encumbrancer."

proceeding do not allege, nor would they support, claims of unconscionability, fraud, accident or mistake.[12]

### Procedural Safeguards

While Connecticut may be one of the few states in which strict foreclosure is the norm, a number of states provide forfeiture procedures under installment land contracts. Because these foreclosure-type procedures involve a defaulting debtor's loss of his property without the benefit or necessity of a public sale, they contain some similarities to strict foreclosure proceedings. A number of post-*BFP* decisions involving installment land contracts have considered whether *BFP* requires a finding that, as a matter of law, the "reasonably equivalent value" of the property transferred must equal the outstanding debt. *See Dunbar v. Johnson (In re Grady)*, 202 B.R. 120 (Bankr.N.D.Iowa 1996) (holding that BFP does not apply to Iowa installment land contract forfeitures); *Vermillion v. Scarbrough (In re Vermillion)*, 176 B.R. 563 (Bankr.D.Or.1994) (holding that BFP does apply to Oregon installment land contract forfeitures); *McCanna v. Burke*, 197 B.R. 333 (D.N.M.1996) (holding that *BFP* prohibits use of market value alone as "reasonably equivalent value" in New Mexico installment land contracts).

The court finds the analysis of *Vermillion*—that a state's interest in regulating real estate forfeitures is comparable under instalment land contracts to its interest in foreclosure sales, and such forfeitures should not be avoided as fraudulent transfers where they have comported with all the procedural safeguards afforded under state law—consistent with *BFP's* determination that § 548 does not preempt a state's interest in the security of land titles and the finality of foreclosure proceedings. *Vermillion*, 176 B.R. at 569 ("Securing real estate titles obtained through this method of conveyance is in Oregon's basic interest.

Invasion of this interest by applying some standard which represents a 'reasonable' or 'fair' price for any forfeited real estate is also unjustified.")

Even if the court were to consider the *Grady* approach—that *BFP* is applicable to strict foreclosures only if the state-law procedural safeguards provided thereunder are comparable to those under a foreclosure sale—the court concludes that *Grady* is not sufficiently apposite when applied to Connecticut procedures for it to be convincing. The *Grady* court considered the notice given to the debtor and others, the opportunity to redeem and whether there are any procedures to permit market factors to operate to the debtor's advantage. In Iowa, debtors have a 30 day period in which to cure a default and reinstate the contract; in Connecticut, the redemption period is set at the discretion of the court, taking into account such factors as the debtor's equity in the property, and the likelihood that he will be able to arrange refinancing or a sale. Prior to passage of the law day, the court may extend the redemption period. The Iowa procedure is non-judicial, while Connecticut's proceedings are overseen by the court. The Connecticut court has before it the property appraisal. In Connecticut, a debtor may file a motion for foreclosure by sale. While the decision to grant such motions is left to the discretion of the court, "[i]t has been held, however, that when the value of the property substantially exceeds the value of the lien being foreclosed, the trial court abuses its discretion when it refuses to order a foreclosure by sale." *Town of Voluntown v. Rytman*, 27 Conn.App. 549, 555, 607 A.2d 896 (1992). The court concludes that Connecticut strict foreclosure law provides a debtor with sufficient procedural safeguards to

---

**12.** As noted, *Fitzgerald* concerned a motion for relief from stay and the court's conclusion—that the motion be denied—is clearly correct under such motion. In the present ruling, the court decides whether, in a complaint based upon § 548, a cause of action is stated upon which relief can be granted.

render it analogous to the foreclosure sale context of *BFP*.[13]

## V.

## CONCLUSION

In accordance with the foregoing discussion, the court concludes that, under the facts of this proceeding, the value received by the debtors for the transfer of their interest in the property pursuant to Connecticut's strict foreclosure proceeding, is the "reasonably equivalent value" of the interest transferred. Because an avoidance action under § 548(a)(1)(B) requires the debtors to prove that they received less than such "reasonably equivalent value," the debtors' complaint fails to state a claim for which relief may be granted and

FIILMC's motion to dismiss the amended complaint is hereby granted. It is

SO ORDERED.

---

13. Connecticut Rules of Superior Court provide, in relevant part:

§ 23–16. Foreclosure of Mortgages
At the time the plaintiff files a motion for judgment of foreclosure, the plaintiff shall serve on each appearing defendant ... a copy of the appraisal report of the property being foreclosed. The motion for judgment shall contain a certification that such service was made.

§ 23–17. Foreclosure of Mortgages—Listing of Law Days
(a) In any action to foreclose a mortgage or lien, any party seeking a judgment of strict foreclosure shall file, with the motion for judgment, a list indicating the order in which law days should be assigned to the parties to the action. The order of the law days so indicated shall reflect the information contained in the plaintiff's complaint, as that information may have been modified by the pleadings. Objections to the order of law days indicated on said list shall only be considered in the context of a motion for determination of priorities, which motion must be filed prior to the entry of judgment.
(b) Unless otherwise ordered by the judicial authority at the time it renders the judgment of strict foreclosure, the following provisions shall be deemed to be part of every such judgment:
(1) That, upon the payment of all of the sums found by the judicial authority to be due the plaintiff, including all costs as allowed by the judicial authority and taxed by the clerk, by any defendant, after all subsequent parties in interest have been foreclosed, the title to the premises shall vest absolutely in the defendant making

such payment, subject to such unpaid encumbrances, if any, as precede the interest of the redeeming defendant.
(2) That the defendants, and all persons claiming possession of the premises through any of the defendants under any conveyance or instrument executed or recorded subsequent to the date of the lis pendens or whose interest shall have been thereafter obtained by descent or otherwise, deliver up possession of the premises to the plaintiff or the defendant redeeming in accordance with this decree, with stay of execution of ejectment in favor of the redeeming defendant until one day after the time herein limited to redeem, and if all parties fail to redeem, then until the day following the last assigned law day.
§ 23–18. Foreclosure of Mortgages—Proof of Debt in Foreclosures
(a) In any action to foreclose a mortgage where no defense as to the amount of the mortgage debt is interposed, such debt may be proved by presenting to the judicial authority the original note and mortgage, together with the affidavit of the plaintiff or other person familiar with the indebtedness, stating what amount, including interest to the date of the hearing, is due, and that there is no setoff or counterclaim thereto.
(b) No less than five days before the hearing on the motion for judgment of foreclosure, the plaintiff shall file with the clerk of the court and serve on each appearing party ... a preliminary statement of the plaintiff's monetary claim.
Conn. Practice Book 1998, § 23–16—23–18 (West 2000).