In re Barbara R. FITZGERALD, Debtor.

Ronald I. Chorches, Chapter 7 Trustee, Plaintiff,

v.

Fleet Mortgage Corporation, Federal National Mortgage Association, Mary A. Stary, John P. Stary and McCue Mortgage Corp., Defendants.

Bankruptcy No. 99–31733 (LMW).
Adversary No. 00–3067.

United States Bankruptcy Court,
D. Connecticut.

Dec. 13, 2000.

Gregory F. Arcaro, Grafstein & Associates, Farmington, for Chapter 7 Trustee.

Thomas J. Farrell, Hunt, Leibert, Chester & Jacobson, P.C., Hartford, for Fleet Mortgage Corporation and Federal National Mortgage Association.

Neil E. Atlas, Atlas & Hudon, L.L.P., West Hartford, for Mary A. Stary, John P. Stary and McCue Mortgage Company.

## FIRST MEMORANDUM OF DECISION IN RESPECT OF ORDER DENYING DEFENDANTS' MOTIONS TO DISMISS

LORRAINE M. WEIL, Bankruptcy Judge.

The matter before the court is a decision on (1) Motion To Dismiss Count One filed by Federal National Mortgage Association ("Federal") and Fleet Mortgage Corporation ("Fleet") and (2) Motion To Dismiss Count One filed by Mary (Marie) A. Stary, John P. Stary (collectively with Mary (Marie) A. Stary, the "Starys") and McCue Mortgage Company ("McCue"), both un-

**808**

der Rule 12(b)(6) of the Federal Rules of Civil Procedure (made applicable to this adversary preceding by Rule 7012 of the Federal Rules of Bankruptcy Procedure).[1] The Motion seeks dismissal of the First Count of the Second Amended Complaint To Avoid Fraudulent Transfers and/or Preferences (the "Second Amended Complaint").[2] In the First Count, pursuant to Bankruptcy Code § 548(a)(1)(B) the chapter 7 trustee (the "Trustee") seeks, *inter alia,* avoidance of the transfer of the above-referenced debtor's (the "Debtor") interest in certain real property (the "Property") to Fleet/Federal[3] pursuant to a fully-consummated strict foreclosure under Connecticut law.

Among other arguments, the Motion asserts that the First Count fails to state a claim upon which relief can be granted because all the relief sought therein is precluded by (1) the doctrines of res judicata/collateral estoppel and/or (2) the Supreme Court's decision in *BFP v. Resolution Trust Corp.,* 511 U.S. 531, 114 S.Ct. 1757, 128 L.Ed.2d 556, *reh'g denied,* 512 U.S. 1247, 114 S.Ct. 2771, 129 L.Ed.2d 884 (1994) (*"BFP"*). Accordingly, the Motion invites this court to reevaluate *Federal National Mortgage Association v. Fitzgerald (In re Fitzgerald),* 237 B.R. 252 (Bankr.D.Conn.1999) (Weil, B.J.) (*"Fitzgerald I"*), in which this court rejected both of the foregoing arguments. In light of the foregoing, I have decided to review the rationale of *Fitzgerald I.*[4]

## I.  FACTS

For the purposes of adjudication of the Motion, the following factual statement has been derived from a fair reading of the Second Amended Complaint and is deemed true.

By complaint dated October 28, 1998, Fleet commenced a foreclosure action (the "Foreclosure Proceeding") against the Debtor in Connecticut Superior Court to foreclose a mortgage on the Property (which, at that time, was owned by the Debtor). On December 11, 1998, the Superior Court entered an order granting a default for failure of the Debtor to appear in the Foreclosure Proceeding. A Judgment of Strict Foreclosure (the "Judgment") was entered in the Foreclosure Proceeding on January 19, 1999.[5] The Judgment established a "law day" of March 15, 1999 (the "Law Day") as to the Debtor's equity of redemption in respect of the Property. The Judgment also found the (fair market) value of the Property to be $157,000 as of January 19, 1999, and found the amount of the relevant mortgage debt (the "Mortgage Debt") to be $135,308.35 as of such date. The Debtor failed to redeem her interest in the Property on or before the Law Day. As a result, "absolute title" to the Property vested in either Fleet or Federal in exchange for full satisfaction of the Mortgage Debt. The Trustee claims that the value of the Property sufficiently exceeded the Mortgage Debt so that such vesting of "absolute title" to the Property was a

---

1.  The referenced motions are hereafter referred to collectively as the "Motion" and all the movants are hereafter referred to collectively as the "Movants".

2.  Technically, the Motion refers to a predecessor of the Second Amended Complaint. However, in the interests of judicial economy, the court deems the Motion to refer to the Second Amended Complaint. Accordingly, all references herein to the "First Count" are references to the First Count of the Second Amended Complaint. The Second Count and Third Count of the Second Amended Complaint seek unrelated relief from Fleet and/or Federal.

3.  The Second Amended Complaint is unclear as to the identity of the initial transferee.

4.  The remaining issues raised by the Motion are disposed of in that certain Second Memorandum of Decision in Respect of Order Denying Defendants' Motions To Dismiss (the "Second Memorandum") of even date herewith.

5.  Connecticut strict foreclosure procedure is summarized in *Fitzgerald I* and a familiarity with such procedure is assumed.

transfer of the Debtor's interest in the Property for less than "reasonably equivalent value" within the purview of Bankruptcy Code § 548(a)(1)(B).[6]

On April 20, 2000, in connection with the complaint initiating this adversary proceeding, the Trustee caused to be filed a Lis Pendens in Volume 108 at Page 916 of the Barkhamsted Land Records. On April 27, 2000, by deed recorded on May 1, 2000 in Volume 108 at Page 964 *et seq.* of the Barkhamsted Land Records, Federal transferred the Property to the Starys. On May 1, 2000, in Volume 108 at Page 967 *et seq.* of the Barkhamsted Land Records, McCue filed a mortgage in respect of the Property. The Trustee subsequently amended the original complaint to add the Starys and McCue as defendants.[7]

## II. DISCUSSION

### A. *Fitzgerald I*

In *Fitzgerald I*, the Debtor had instituted an adversary proceeding under Bankruptcy Code §§ 548(a)(1)(B) and 550 (the "First Adversary Proceeding"), *inter alia,* to avoid vesting of "absolute title" to the Property in Fleet/Federal as a condition precedent to her cure and reinstatement of the Fleet mortgage in a chapter 13 plan. Arguing that its "absolute title" could not be avoided under Section 548(a)(1)(B) as a consequence of the doctrines of res judicata/collateral estoppel and/or of the Court's

holding in *BFP*, Federal sought relief from stay to eject the Debtor from the Property. This court allowed the automatic stay to remain in effect (on conditions) because the court held that the First Adversary Proceeding presented serious questions which the Debtor ought to be given the opportunity to litigate.[8] The court also concluded that neither the doctrines of res judicata/collateral estoppel nor the Court's holding in *BFP* precluded the relief sought by the Debtor in the First Adversary Proceeding. Among other things, the Motion seeks to have the court reevaluate those conclusions.

### B. *Res Judicata/Collateral Estoppel* [9]

■ The Movants argue that, by entering a judgment of strict foreclosure (rather than foreclosure by sale), the foreclosure court necessarily determined that the Debtor did not have "substantial equity" in the Property. That determination, the Movants further argue, is sufficiently similar to the "reasonably equivalent value" inquiry mandated by Section 548(a)(1)(B) so as to be determinative of that issue here under principles of res judicata/collateral estoppel.

■ *Fitzgerald I* rejected the Movants' res judicata/collateral estoppel argument. *See Fitzgerald I,* 237 B.R. at 263–65. After a review of that portion of *Fitzgerald I,* this court reaffirms the rationale stated

---

**6.** Bankruptcy Code § 548 provides in relevant part as follows:

> (a)(1) The trustee may avoid any transfer of an interest of the debtor in property ... that was made or incurred on or within one year before the date of the filing of the petition, if the debtor voluntarily or involuntarily—
>
> ...
>
> (B) (i) received less than a reasonably equivalent value in exchange for such transfer or obligation; and
> (ii)... was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation ....

11 U.S.C.A. § 548(a) (West 2000).

**7.** The court is not required to express and, accordingly, expresses no opinion on the ef-

fect of the filing of a notice of lis pendens on the ability of a subsequent purchaser or encumbrancer to assert the immunity provided for in Bankruptcy Code § 550(b).

**8.** Subsequently, the Debtor proved unable or unwilling to comply with the conditions which the court had imposed on the automatic stay of Federal's ejectment proceedings. As a consequence, the case was converted to a case under chapter 7 of the Bankruptcy Code (at the Debtor's election); Federal was granted relief from stay (unopposed); and the Debtor withdrew the First Adversary Proceeding and vacated the Property.

**9.** The differences between the doctrines of res judicata and collateral estoppel were discussed in *Fitzgerald I. See id.,* 237 B.R. at 263 n. 16.

therein. In particular, the court remains unpersuaded that the Judgment necessarily resulted from the foreclosure court's conclusion that the Property's value did not materially exceed the Mortgage Debt. Under Connecticut foreclosure procedure, if neither party moves for foreclosure by sale, a judgment of strict foreclosure does not require the foreclosure court to determine that foreclosure by sale is inapplicable (i.e., that there is insufficient equity in the property to justify foreclosure by sale). *See Fitzgerald I*, 237 B.R. at 264–65 ("[The foreclosure court's] power [to order foreclosure by sale when neither party moves for foreclosure by sale] is discretionary (rather than mandatory) and the mortgagor may have reasons for not requesting foreclosure by sale even if there appears to be 'substantial equity' in the subject property."). Instead, in that situation, any equity extant in the property is considered by the court in the exercise of its sound discretion in setting the strict foreclosure law day(s). *See id.* at 261 ("In cases where there is equity in the property but foreclosure by sale has not been ordered, a longer redemption period may be set by the foreclosure court in its discretion."); Transcript of January 19, 1999 hearing before foreclosure court (the "Foreclosure Proceeding Transcript") (a copy of which transcript is in the record of the *Fitzgerald I* proceedings and is annexed hereto as Annex A). Nor is the court convinced that the foreclosure court actually made a determination of the absence of substantial equity in this case. Rather, in ordering strict foreclosure (with a somewhat expanded redemption period) instead of foreclosure by sale, the foreclosure court could have been acknowledging the possibility of a reasoned decision by the Debtor not to seek foreclosure by sale even though there may have been "substantial equity" in the Property. *See* Denis R. Caron, *Connecticut Foreclosures* § 5.02D, at 143 (3d ed. 1997) ("Connecticut Foreclosures") (The owner of the equity may opt not to seek a foreclosure sale even if there is substantial equity in the property because "[t]here

may be a contemplated refinancing, a private sale may already be in the works, or more time to find a private buyer may be desired."); Foreclosure Proceeding Transcript.

Moreover, as explained more fully below, the Connecticut legislature has made the decision not to accord a conclusive presumption of "reasonably equivalent value" to strict foreclosures under state fraudulent transfer law (unlike foreclosures by sale which generally are accorded that presumption under the statute). *See* Conn. Gen.Stat. § 52–552d(b). The Section 52–552d(b) concept of "reasonably equivalent value" is identical to the Section 548(a)(1)(B) concept of "reasonably equivalent value".[10] Therefore, the legislative decision embodied in Section 52–552d(b) further supports this court's conclusion in *Fitzgerald I* that the "substantial equity" inquiry which may be conducted in the strict foreclosure context is not sufficiently similar to the "reasonably equivalent value" inquiry conducted in the Section 548(a)(1)(B) context for res judicata/collateral estoppel purposes.

## C. *Applicability of BFP*

■ Bankruptcy Code § 548(a)(1)(B) permits the avoidance of certain prepetition transfers of the debtor if made in exchange for less than "reasonably equivalent value". 11 U.S.C. § 548(a)(1)(B). In *BFP*, the Court held that the price received at a mortgage foreclosure sale conducted in accordance with applicable state law conclusively establishes the value of the subject property for determining Section 548(a)(1)(B) "reasonably equivalent value". A question addressed in *Fitzgerald I* and revisited here is whether the *BFP* conclusive presumption of "reasonably equivalent value" is applicable to a Connecticut strict foreclosure. The required analysis begins with an analysis of *BFP* itself.

**10.** *See* note 14, *infra.*

In *BFP*, the Court was faced with the task of construing the Section 548(a)(1)(B) phrase "reasonably equivalent value" in a real estate foreclosure sale context while giving appropriate weight to the traditional sovereignty of the states over real estate foreclosures. The Court decided *BFP* based upon the evidentiary value of the foreclosure sale process itself, concluding that the evidence of value produced by the foreclosure sale process (i.e., the successful bid) is "the only *legitimate evidence* of the property's value at the time [the property] ... is sold." *See BFP*, 511 U.S. at 548–49, 114 S.Ct. 1757 (emphasis added). A close reading of *BFP* indicates the reasons why the Court took an "evidentiary" approach rather than carving out a blanket exception for foreclosures from the federal fraudulent transfer laws. First, an "evidentiary" approach is consistent with the Court's admonition that:

> [t]he language of [§ 548(a)(1)(B) ] ... ("received less than a reasonably equivalent value in exchange") *requires judicial inquiry* into whether the foreclosed property was sold for a price that approximated its worth at the time of sale.

*BFP*, 511 U.S. at 538–39, 114 S.Ct. 1757 (emphasis added).[11] Second, an "evidentiary" approach allowed the Court to refute "the dissent's characterization of [the majority's] ... interpretation as carving out an 'exception' for foreclosure sales ... or as giving 'two different and inconsistent meanings' ... to 'reasonably equivalent value.'" *See BFP*, 511 U.S. at 548, 114 S.Ct. 1757.

Based upon the foregoing, in order to determine whether strict foreclosure is governed by the *BFP* conclusive presumption of "reasonably equivalent value", one question must be answered: Does strict foreclosure produce "legitimate evidence" of the subject property's value at the time of transfer of "absolute title"? Unlike foreclosure by sale, strict foreclosure does not produce a property valuation directly (e.g., a successful bid amount).[12] Rather, strict foreclosure produces a judicially-determined time period (i.e., the redemption period). Therefore, the court restates the relevant question as follows: Is the fact that the Debtor failed to arrange a "redeeming" sale (or refinance) of the Property within the redemption period set by the foreclosure court "legitimate evidence" for Section 548(a)(1)(B) purposes that the Property was not worth materially more than the Mortgage Debt at the time of transfer of "absolute title"? In *Fitzgerald I*, this court answered that question in the negative. Upon further consideration, the court stands by its earlier conclusion.

*BFP* emphasized the traditional sovereignty of the states over real estate foreclosures. However, the subject transfer in *BFP* was a foreclosure *sale*. The evidentiary value of a foreclosure sale is more apparent than the evidentiary value of a strict foreclosure. *Cf.* Uniform Fraudulent Transfer Act § 3, comment (comment to Act section according conclusive presumption of reasonably equivalent value to regularly-conducted foreclosure sales; "a sale of the collateral by the secured party as the normal consequence of default ... [is] the safest way of establishing the fair value of the collateral ....") (citation omitted; alteration in original). Accordingly, it is consistent with *BFP* for this court to acknowledge state sovereignty by consulting applicable state law (including state fraudulent transfer law) as a guide for determining the evidentiary value of a mode of foreclosure (i.e., strict foreclosure)

**11.** Essentially, the Movants argue here that the foreclosure court made the requisite "judicial inquiry" when it ordered strict foreclosure for the Property (rather than foreclosure by sale). The court rejects that argument for the reasons stated in part II.B of this memorandum.

**12.** The foreclosure court does make an explicit finding of property value in strict foreclosure on a fair-market-value basis. However, if *BFP* applies, then fair-market value is not the proper valuation standard here for the Property. *Id.*, 511 U.S. at 548–49, 114 S.Ct. 1757. Accordingly, for present purposes, the court will disregard the foreclosure court's fair-market valuation of the Property.

not specifically addressed by the Court in *BFP*. As explained more fully below, Connecticut fraudulent transfer law does not accord a conclusive presumption of "reasonably equivalent value" to strict foreclosures (although the opposite generally is true thereunder for foreclosures by sale). *See* Conn. Gen.Stat. § 52–552d(b). Thus guided by the foregoing reference to state law, the court concludes that a Connecticut strict foreclosure has insufficient evidentiary value to trigger the *BFP* conclusive presumption of Section 548(a)(1)(B) "reasonably equivalent value".[13] An analysis of Section 52–552d(b) follows below.

Section 52–552d of the Connecticut General Statutes was enacted in 1991 as part of Connecticut's enactment of the Uniform Fraudulent Transfer Act ("UFTA"). Section 52–552d(b) provides as follows:

> For the purposes of subdivision (2) of subsection (a) of section 52–552e ["Transfers fraudulent as to present creditors"] and section 52–552f ["Transfers fraudulent as to present creditors"], a person gives a reasonably equivalent value if the person acquires an interest of the debtor in an asset pursuant to a regularly conducted, noncollusive foreclosure sale or execution of a power of sale for the acquisition or disposition of the interest of the debtor upon default under a mortgage, deed of trust or security agreement.

Conn. Gen.Stat. Ann. § 52–552d(b) (West 2000). The parties have not identified nor has the court located any decisions construing Section 52–552d(b) in the context of a strict foreclosure. However, the plain language of the statute excludes strict foreclosure from the statutory protection. That alone is sufficient to support this court's construction of Section 52–552d(b). *See Caltabiano v. Planning and Zoning Comm'n*, 211 Conn. 662, 666, 560 A.2d 975 (1989) (When the language of the statute is clear and unmistakable, construction is prohibited and legislative intent is conclusively established by the statute's plain meaning.); *see also Gay and Lesbian Law Students Ass'n at University of Connecticut School of Law v. Board of Trustees, University of Connecticut*, 236 Conn. 453, 476, 673 A.2d 484 (1996) ("[W]here express exceptions are made, the legal presumption is that the legislature did not intend to save other cases from the operation of the statute.") (citation omitted; alteration in original). Moreover, relevant legislative history shows that the Connecticut legislature's exclusion of strict foreclosure from the purview of the Section 52–552d(b) conclusive presumption was intentional.

Section 52–552d is substantially identical to Section 3 of the UFTA. *Compare* Conn. Gen.Stat. § 52–552d *with* UFTA § 3.[14] However, the version of Section 52–552d

**13.** In *BFP* (which concerned California real estate), the Court implicitly rejected the argument that the subject foreclosure sale had insufficient evidentiary value because, under applicable state law, the bid price was not conclusive of property value for the purpose of calculating the amount of any deficiency judgment. *Cf. BFP*, 511 U.S. at 555 n. 7, 114 S.Ct. 1757 (Souter, J., dissenting) (successful bid amount not conclusive of property value for deficiency judgment in many states); Cal. Code. Civ. Proc. § 580(a) (same rule in California). However, fraudulent transfer laws and deficiency judgment laws have different purposes and are poor analogies for each other. Here, the analogy is exact: "reasonably equivalent value" under fraudulent transfer law compared to "reasonably equivalent value" under fraudulent transfer law. Moreover, as discussed above, the evidentiary value of a foreclosure sale is apparent. Thus, it

was unnecessary for the Court to consult state fraudulent transfer law as a guide for determining the evidentiary value of a foreclosure sale. *See BFP*, 511 U.S. at 548–49, 114 S.Ct. 1757. Instead, the Court crafted a uniform federal rule applicable to a mode of foreclosure available in every state. In any event, the foreclosure sale at issue in *BFP* was immune from attack under California fraudulent transfer law. *See* Cal. Civ.Code § 3439.08(e)(2).

**14.** The UFTA (and Section 52–552d) concept of "reasonably equivalent value" is identical to the Section 548(a)(1)(B) concept of "reasonably equivalent value". *See Leibowitz v. Parkway Bank & Trust Co. (In re Image Worldwide, Ltd.)*, 139 F.3d 574, 577 (7th Cir.1998) ("[T]he UFTA ... derived the phrase 'reasonably equivalent value' from 11 U.S.C. § 548(a)[(1)(B)].").

originally presented to the Connecticut legislature was a non-uniform version of UFTA § 3 which provided in relevant part as follows:

> For the purposes of subdivision (2) of subsection (a) of section [52–552e] ... and of section [52–552f] ..., a person gives a reasonably equivalent value if the person acquires an interest of the debtor in an asset pursuant to a regularly conducted, noncollusive foreclosure sale, *strict foreclosure* or execution of a power of sale for the acquisition or disposition of the interest of the debtor upon default under a mortgage, deed of trust or security agreement.

Raised Bill No. 6813, § 4(b), Jan. Sess., 1991(emphasis added). The proposed non-uniform version of Section 52–552d(b) was the subject of positive comment at public hearings. *See An Act Adopting the Uniform Fraudulent Transfer Act and Repealing Article 6 of the Uniform Commercial Code: Hearing on H.B. 6813 Before the Conn. Joint Standing Comm., Judiciary,* Pt. 1, 1991 Sess., p. 192 (comments of representative of the Commercial Law and Bankruptcy Section of the Connecticut Bar Association; "[w]e believe that strict foreclosures should be included within the ambit of the act. We recognize that Connecticut is unique in that position. We understand that some people are opposed to it, but we prefer to have it included. The bill is still workable even if [strict foreclosure] ... is excluded."). However, the version of Section 52–552d(b) enacted in 1991 (and still in effect) in Connecticut deleted any reference to strict foreclosure. *See Connecticut Foreclosures* § 22.02F, at 544 ("Interestingly, the original bill introducing the [UFTA] included strict foreclosure as part of the [UFTA] § [3](b) exemption, but that provision was excised from the final version that was ultimately

adopted."). Thus it can be seen that the Connecticut legislature considered extending the proposed statutory conclusive presumption of "reasonably equivalent value" to strict foreclosures, but intentionally declined to do so. *See Connecticut Foreclosures* § 22.02F, at 544 ("Since ... [the Connecticut Fraudulent Transfer Act] exempts only noncollusive foreclosure sales, it is apparent that lenders acquiring title by other means, such as strict foreclosure ..., remain at risk that such a transfer could be set aside as fraudulent.").[15]

In their Reply Memorandum of Law in Support of Motion To Dismiss (the "Federal/Fleet Reply"), Federal/Fleet argue that in passing the final version of Section 52–552d(b), the Legislature did not intend any substantive consequences from the deletion of the term "strict foreclosure" but, rather, intended only to "assure conformity with the Uniform Act" (which did not refer to strict foreclosure). (Federal/Fleet Reply at 3.) Federal/Fleet's argument assumes that Connecticut's version of the UFTA is in fact in conformity with the UFTA in all material respects. That is not so. For example, UFTA § 8 ("Defenses, Liability, and Protection of Transferee") provides in relevant part as follows: "A transfer is not voidable under Section 4(a)(2) or Section 5 if the transfer results from ... *enforcement of a security interest in compliance with Article 9 of the Uniform Commercial Code.*" UFTA § 8(e) (emphasis added). On the other hand, the Connecticut version of UFTA § 8 provides no specific immunity for proper enforcement of Article 9 security interests. *See* Conn. Gen.Stat. § 52–552i(e). Since the Legislature was not concerned about passing a non-uniform version of the UFTA by deleting an immunity provided therein applicable to a common type of security in-

---

**15.** Moreover, Connecticut courts have held that a statutory reference to strict foreclosure does not imply a reference to foreclosure by sale, and vice versa. *See, e.g., New England Savings Bank v. Lopez,* 227 Conn. 270, 278–79, 630 A.2d 1010 (1993). *Cf. Madison Hills Limited Partnership II v. Madison Hills, Inc.,*

35 Conn.App. 81, 90–91, 644 A.2d 363 (1994) (reference in Connecticut's version of Uniform Partnership Act to remedy of foreclosure without designation as to mode of foreclosure was intended as a reference to either mode of foreclosure).

terest (i.e., Article 9 security interests) long recognized in Connecticut, it defies logic to assume that the Legislature would have been concerned about passing a non-uniform version of the UFTA by adding a statutory protection for a form of foreclosure (i.e., strict foreclosure) almost unique to Connecticut.[16] Accordingly, for all of the foregoing reasons the court adheres to the conclusion stated above that, under Connecticut law, a strict foreclosure is not entitled to a conclusive presumption of "reasonably equivalent value".

Guided by the foregoing analysis of the evidentiary value of a strict foreclosure under Connecticut law, this court stands by its original conclusion in *Fitzgerald I* that a Connecticut strict foreclosure has an insufficient evidentiary value to trigger the *BFP* conclusive presumption of "reasonably equivalent value" under Bankruptcy Code § 548(a)(1)(B). For the foregoing reason, the court respectfully disagrees with *Talbot v. Federal Home Loan Mortgage Corp. (In re Talbot)*, 254 B.R. 63 (Bankr.D.Conn.2000) (Krechevsky, B.J.).

The court reserves the issue of the standard of value to be applied in determining "reasonably equivalent value" in the strict foreclosure context. On this record, it cannot be said as a matter of law that the Trustee would fail to satisfy any potential valuation standard as a matter of law. The articulation of the proper standard (and the Trustee's satisfaction or failure to satisfy the same) properly should await further briefing of the issue and development of the record by the parties.

## III. CONCLUSION

For the reasons set forth above and those stated in the Second Memorandum, an order will enter denying the Motion.

### ANNEX A

FLEET MORTGAGE CORP.

v.

BARBARA R. FITZGERALD

No. CV-98-0078332

STATE OF CONNECTICUT: SUPERIOR COURT

JUDICIAL DISTRICT OF LITCHFIELD

AT LITCHFIELD

Jan. 19, 1999.

**APPEARANCES:** *Representing the Plaintiff*

RICHARD JACOBSON, ESQUIRE

**BEFORE: THE HONORABLE WALTER M. PICKETT, JUDGE.**

---

**16.** Federal/Fleet further assert that all foreclosures (including strict foreclosures) nevertheless are protected under the UFTA and Connecticut Fraudulent Transfer Act (Conn. Gen. Stat. §§ 52–552a *et seq.*). Federal/Fleet argue that, because UFTA § 1(12) and Section 52–552b(12) of the Connecticut General Statutes do not specifically refer to foreclosure in their definition of "transfer", a foreclosure is not a "transfer" within the meaning of those statutes. However, in proposing UFTA § 3(b) in 1984, the drafters intended to codify *Lawyers Title Ins. Corp. v. Madrid (In re Madrid)*, 21 B.R. 424 (9th Cir. BAP 1982), *aff'd on other g'nds*, 725 F.2d 1197 (9th Cir.1984), which anticipated *BFP* by holding that the price bid at a regularly conducted public foreclosure sale conclusively established the presence of "reasonably equivalent value". *See* UFTA § 3, comment. In so doing, the UFTA draft- ers rejected *Madrid v. Lawyers Title Ins. Corp. (In re Madrid)*, 725 F.2d 1197 (9th Cir.1984), which held that a "transfer" did not occur at the time of the foreclosure sale. At about the same time, Congress also rejected the 1984 Court of Appeals decision in *Madrid* by a clarifying amendment to the Bankruptcy Code definition of "transfer" (11 U.S.C. § 101(54) (as amended)) which specifically referred to foreclosure as a type of "transfer". *See* Pub.L. 98–353 § 421(i), 98 Stat. 333 § 421(i) (1984) (1984 amendment to Bankruptcy Code's definition of "transfer"). In any event, if there were no "transfer" upon foreclosure, the "foreclosure" language in UFTA § 3(b) and Section 52–552d(b) would be unnecessary. *See also* UFTA § 1(12) (expansive definition of "transfer"); Conn. Gen. Stat. § 52–552b(12) (same).

GERALDINE GERST
Court Recording Monitor
Superior Court
15 West Street—P.O. Box 131
Litchfield, CT 06759

THE COURT: Fleet Mortgage and Fitzgerald.

MR. JACOBSON: That's ready, Your Honor.

Good morning. Richard Jacobson for the plaintiff.

THE CLERK: Your Honor, defaults have all entered in this file. We do need, however, a military affidavit and a finding concerning Barbara R. Fitzgerald.

MR. JACOBSON: I'm delivering that right now, Your Honor.

THE CLERK: Military affidavit.

THE COURT: Military is in order.

Principal debt one hundred twenty-five thousand four hundred and fifty-seven dollars and twenty-three cents.

Interest to January 11th, six thousand eight hundred dollars and seven cents.

Additional interest two hundred and forty-four dollars and eight cents.

Advanced escrow two thousand eight hundred and six dollars and ninety-seven cents.

Attorney's fees fifteen hundred dollars.

Appraisal fee two hundred and twenty dollars.

Title search one hundred and fifty.

There's some equity in the property. Is there a request for a sale here?

MR. JACOBSON: Nobody has appeared on behalf of the defendant. She is aware of the action. She has contacted our office but hasn't filed an appearance or request for a sale.

THE COURT: There's about twenty thousand dollars of equity in the property.

MR. JACOBSON: There does appear to be approximately twenty thousand dollars. Of course there'd be the expenses of the sale of probably five thousand dollars in addition to accruing interest.

THE COURT: Well, let's give it a little extended law day.

THE CLERK: How far do you want to go?

THE COURT: Well, normally we'd be using what?

THE CLERK: February 16th is the minimum now.

THE COURT: Give it a month after that.

THE CLERK: That's March 15th.

MR. JACOBSON: Thank you.

(WHEREUPON, THE HEARING WAS CONCLUDED)